STATE OF NORTH CAROLINA v. JAMES A. BUSH

No. 6PA82

(Filed 7 December 1982)

1. **Homicide § 28 — instruction of self-defense erroneous — harmless error**

Where there was neither (1) evidence which would have supported a finding that defendant in fact formed a belief that it was necessary for him to kill the victim in order to protect himself from death or great bodily harm, nor (2) was there evidence which would have supported a finding that any such belief was reasonable, the trial court erred in giving the jury any instructions relative to self-defense. However, this error was favorable to the defendant and clearly harmless to him beyond a reasonable doubt, since it resulted in the jury giving consideration to acquittal upon a ground which the defendant was not entitled to have the jury consider.

2. **Homicide § 25.2 — error in instructions concerning absence of malice — cured by jury's verdict of murder in first degree**

In a prosecution for murder in the first degree, any error in the jury instructions placing the burden of persuasion on the defendant to show absence of malice was cured by the jury's verdict of murder in the first degree. In find-

ing the defendant guilty beyond a reasonable doubt of the willful, deliberate and premeditated killing of the victim, the jury in the case necessarily rejected *beyond a reasonable doubt* the possibility that the defendant acted in the heat of passion.

**3. Criminal Law § 181— collateral attack upon criminal convictions — statutes controlling**

The procedures and standards to be employed with regard to collateral attacks upon criminal convictions, such as defendant's Motion for Appropriate Relief, are no longer controlled by our former Post-Conviction Hearing Act, G.S. 15-217 through G.S. 15-222, but are now controlled by the statutes comprising Article 89 of G.S. Chapter 15A, G.S. 15A-1411 through G.S. 15A-1422.

**4. Criminal Law § 181.1— motion for appropriate relief — time for filing — grounds**

Even though the defendant made his Motion for Appropriate Relief more than 10 days after the entry of judgment, the motion was not subject to summary denial on that basis since the defendant asserted that his conviction was obtained unconstitutionally which is one of the grounds for appropriate relief which may be asserted without limitation as to time. G.S. 15A-1414 and G.S. 15A-1415.

**5. Criminal Law § 181.2— post-conviction hearing — motion for appropriate relief — requirement of showing ground for relief and prejudice**

Once defendant stated with specificity in his Motion for Appropriate Relief the manner in which he asserted that his conviction was obtained in violation of the Constitution of the United States, he was entitled to a hearing on questions of law or fact arising from the motion. G.S. 15A-1420(c)(1). Defendant then had the burden of showing the existence of the asserted ground for relief and also to show "prejudice." G.S. 15A-1420(c)(3) and (6). The superior court then must make findings of fact and conclusions of law in its order granting or denying relief; however, it was not necessary for the Court to remand the case for further findings of fact or conclusions of law where the superior court did not make extensive findings or conclusions in its order denying defendant's motion since the record revealed that the determinative facts were and are uncontested and that the errors complained of were harmless beyond a reasonable doubt as a matter of law.

ON certiorari to review the 21 April 1981 Order of *Judge Henry L. Stevens, III*, Superior Court, ONSLOW County, denying the defendant's Motion for Appropriate Relief. The Supreme Court allowed the defendant's petition for writ of certiorari on 12 January 1982.

*Rufus L. Edmisten, Attorney General, by Lester V. Chalmers, Jr., Special Deputy Attorney General and Donald W. Stephens, Assistant Attorney General, for the State.*

*Richard E. Giroux and Richard A. Rosen, Attorneys for defendant-appellant.*

MITCHELL, Justice.

The primary issue presented in this case is whether the trial court committed prejudicial and reversible error during the defendant's original trial for murder in the first degree by instructing the jury that the defendant had the burden of proving self-defense and absence of malice. For reasons set forth herein, we find no reversible error in this regard and affirm the 21 April 1981 Order of the Superior Court denying the defendant's Motion for Appropriate Relief.

The defendant was tried before Judge George M. Fountain and a jury and convicted during the 19 May 1975 Session of Superior Court, Onslow County, for the murder in the first degree of Kirby W. Marshburn.[1] He was sentenced to death and appealed. This Court found no error in the conviction or sentence, 289 N.C. 159, 221 S.E. 2d 333 (1976). The Supreme Court of the United States later vacated the sentence of death against the defendant, 429 U.S. 809, 50 L.Ed. 2d 69, 97 S.Ct. 46 (1976). On remand a life sentence was imposed in Superior Court, Onslow County, on 30 November 1976.

On 14 April 1981, the defendant filed a Motion for Appropriate Relief pursuant to G.S. 15A-1411 *et. seq.* alleging that the trial court improperly placed the burden upon him to prove self-defense and absence of malice and denied him due process of law in violation of the requirements of the Fifth and Fourteenth Amendments to the Constitution of the United States, Article I, Section 19 of the Constitution of North Carolina and the constitutional mandate of *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975). The defendant further alleged that the failure of his court appointed attorneys to raise the due process issues of *Mullaney* relative to the burden of proof on self-defense and absence of malice deprived him of his right to effective assistance of counsel, due process of law and equal protection of

---

1. The jury was instructed on both murder in the commission of a felony and murder with premeditation and deliberation. The jury returned a verdict finding the defendant guilty of "murder in the first degree" without specifying whether it had found him guilty on one theory or the other or on both theories. This being so, prejudicial error in the trial court's instructions relative to either theory will require a new trial. *Cf. Stromberg v. California,* 283 U.S. 359, 75 L.Ed. 1117, 51 S.Ct. 532 (1931) (conviction could have been based on any one clause in the statute, unconstitutionality of one of the three clauses in the statute required reversal).

the law guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 19 and 23 of the Constitution of North Carolina. By Order dated 21 April 1981, the Superior Court denied the defendant's Motion for Appropriate Relief. We allowed the defendant's petition for writ of certiorari to review that Order on 12 January 1982.

A complete recitation or review of the evidence offered during the original trial on behalf of the State and the defendant would serve no useful purpose. A more complete statement of facts in this regard is to be found in the opinion rendered by this Court upon the defendant's direct appeal of his trial and conviction, 289 N.C. 159, 221 S.E. 2d 333 (1976). Our review of the evidence for the State and the defendant and the instructions of the trial court during the original trial is limited to those matters pertinent to our consideration of the propriety of the 21 April 1981 Order of the Superior Court denying the defendant's Motion for Appropriate Relief.

Sometime during the early evening hours of 18 November 1974, the defendant took an automobile which was parked outside a bar near Camp Lejeune, a base operated by the United States Marine Corps near Jacksonville, North Carolina. The defendant, a 20 year old marine, had been drinking beer and lost control of the car and drove it into a ditch. He then walked to the trailer home of Kirby W. Marshburn, the deceased, and Mrs. Marshburn. There the defendant asked for and received permission to enter the Marshburn home to use the telephone. The defendant's testimony in his own behalf during his trial indicated in substance that the following events then occurred:

After I was unable to reach the person I was calling, I had a conversation with the man in the house and as far as I knew there was nobody in the house except me and the man. We were standing in the kitchen having our conversation. Up until that time our relationship had been good and we had just been talking. There were no ill words between us at that time. I asked him for a drink of water and he gave me a glass full of water and we stood there and talked. I was standing inside the kitchen by the sink and the man was standing near me and the door was on the other side of him. The man was talking about some person down the road that owned a

wrecker and he said something about there being a "colored boy" down the road who owned a wrecker. Before he got all the words out I corrected him and I said "colored boy?" and I asked him what color the person was. The man did not make any immediate response, it was kind of a delayed response and he stopped for a second and then all of a sudden he started pushing me and telling me to get out. At that time I was standing in front of the sink and the sink was to my back. Mr. Marshburn was standing in front of me and the door that I entered was behind him. I must have been six or seven inches from the sink when he pushed me and I backed into the sink. He never struck me and he did not have a weapon in his hand.

I believe he repeated three or four times for me to get out of the trailer and all the time he was between me and the door. There were dishes around the kitchen but I do not recall if there was any food on the table. There was a counter top by the sink and I saw a knife laying there (State's Exhibit 4) and I picked it up. I picked up the knife because I was nervous and I thought I was protecting myself and I was afraid for my safety.

As far as I knew the only way out of the trailer was the door that I entered as I had never been there before and I did not know who was there when I went there. After picking up the knife, I stabbed the man to get him off of me and at that time I did not have any intention of stealing anything from him or from his house. When I went into the house earlier I did not have any intention of stealing anything.

. . . .

Earlier in my testimony I did say that I picked up a knife on the counter and I did pick it up intentionally. I stabbed Kirby Marshburn knowing what I was doing and I stabbed him to get him away from me. I had backed up as far as I could back up and the only way I knew out of the trailer was through the door that I entered. I was afraid for my safety at that time and I now realize that I probably used more force than was necessary. Prior to using the force that resulted in the man's death, I did not intend on doing anybody any harm or taking anything from the trailer.

. . . .

The thought of robbery never entered my mind when I went to the Marshburn house. Mr. Marshburn pushed me towards the sink and we were facing each other at that time. My body hit the sink and I looked back behind me and saw the knife. I was in another man's house and I knew that he wanted me to get out of his house. I do not know what kept me from walking past this 65 year old man and I guess I probably could have done that. At that time I thought I had a reason for picking up the knife as I was looking out for myself and my safety. I do not know what made me afraid of this 65 year old man. I realize he was much older than me and he did not have a weapon. He had not threatened to use a weapon on me and he allowed me to come into his house and use his phone and he had given me a drink of water. I did think it was necessary to pick up a knife and stab him at that time.

I do not remember where I stabbed him the first time and I do not remember how many times I stabbed him. Mr. Marshburn had nothing behind him and I had the sink behind me. There was nothing behind and I could have hit him in the face but I grabbed the knife and stabbed him instead. I don't know how many times I stabbed him before he fell but I did not stab him after he fell on the floor. If the man was stabbed six times with the knife then he was stabbed six times standing up. I cannot explain the abrasions about Mr. Marshburn's face because I did not hit him in the face. I did not stomp him with my boots after he was on the floor and I do not know how he got those abrasions on his face. I was no more than an arm's length away from him. He wasn't exactly struggling at that time and I don't remember exactly what he was doing. I did stab him six times before he fell.

The evidence additionally revealed that the deceased died of the knife wounds inflicted by the defendant. Mrs. Eva Marshburn returned to the home shortly after the events described by the defendant in his testimony and found it ransacked with her husband, Kirby W. Marshburn, lying on the floor in a pool of blood. One of the Marshburns' steak knives and Mr. Marshburn's billfold were on the floor near his body. When Mrs. Marshburn looked up

from her husband's body she saw the defendant standing near her. The defendant took three dollars from Mrs. Marshburn and told her that he was not going to harm her. The defendant then tied her up, took her car keys and a gun and left the home.

[1] On certiorari to this Court, the defendant assigns as error the denial of his Motion for Appropriate Relief and reasserts his contention that the instructions of the trial court during his original trial erroneously placed the burden upon him to prove self-defense and absence of malice to the satisfaction of the jury. We consider first the erroneous instructions[2] of the trial court on the issue of self-defense. We find that the evidence before the trial court did not justify any instruction on the law of self-defense and that any instruction on self-defense was error favorable to the defendant and harmless beyond a reasonable doubt.

Perfect self-defense excuses a killing altogether and is established when it is shown that, at the time of the killing:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

---

2. Although our analysis and decision in this case do not make it necessary for us to resolve the question, we assume *arguendo* throughout this opinion that the instructions of the trial court during the defendant's original trial violated the constitutional principles of *Mullaney* by placing on the defendant the burden of proving to the satisfaction of the jury self-defense and the burden of proving that he acted in the heat of passion on sudden provocation which would establish an absence of malice.

*State v. Norris,* 303 N.C. 526, 530, 279 S.E. 2d 570, 572-73 (1981). Imperfect self-defense arises when only elements (1) and (2) in the preceding quotation are shown. Therefore, if the defendant believed it was necessary to kill the deceased in order to save himself from death or great bodily harm, and the defendant's belief was reasonable because the circumstances at the time were sufficient to create such a belief in the mind of a person of ordinary firmness, but the defendant, although without murderous intent, was the aggressor or used excessive force, the defendant would have lost the benefit of perfect self-defense. In this situation he would have shown only that he exercised the imperfect right of self-defense and would remain guilty of at least voluntary manslaughter. *State v. Wilson,* 304 N.C. 689, 695, 285 S.E. 2d 804, 808 (1982). However, both elements (1) and (2) in the preceding quotation must be shown to exist before the defendant will be entitled to the benefit of either perfect or imperfect self-defense.

Applying the foregoing principles of law to the present case, we find that the evidence taken in the light most favorable to the defendant completely fails to show any circumstances existing at the time the defendant killed the deceased which would have justified an instruction on the law of either perfect or imperfect self-defense. The record before us is void of any evidence tending to show that the defendant in fact believed it necessary to kill the deceased in order to save himself from *death* or *great bodily harm.* The defendant's own testimony taken in the light most favorable to him indicates clearly that Marshburn, at worst, pushed the defendant and told him to get out of the Marshburn home. The defendant clearly testified that Marshburn "had not threatened to use a weapon" against the defendant and had not attempted even to strike the defendant other than by placing his hands upon him and pushing him. There is absolutely no evidence tending to indicate that Marshburn was so large or powerful as to cause the defendant to be unduly alarmed by such conduct. To the contrary, the evidence shows that Marshburn was a 65 year old man and the defendant was a 20 year old member of the United States Marine Corps. Nor are the defendant's self-serving statements that he was "nervous" and "afraid" and that he thought he was "protecting myself" an adequate basis for an instruction on self-defense. Even these self-serving statements do no more than indicate merely some vague and unspecified nervousness or fear; they do not amount to evidence that the defend-

ant had formed any subjective belief that it was necessary to kill the deceased in order to save himself from *death* or *great bodily harm.* Instead, all of the evidence tends to indicate that the defendant had not formed a belief that it was necessary to kill Kirby Marshburn in order to save himself from death or great bodily harm. It is even more apparent, if that is possible, that any fear by the defendant of death or great bodily harm was not reasonable. The circumstances as the defendant testified that they appeared to him at the time were totally insufficient to create any such belief in the mind of a person of ordinary firmness.

A defendant is entitled to an instruction on self-defense if there is any evidence in the record from which it can be determined that it was necessary or reasonably appeared to be necessary for him to kill his adversary in order to protect himself from death or great bodily harm. *State v. Spaulding,* 298 N.C. 149, 156, 257 S.E. 2d 391, 395 (1979). If, however, there is no evidence from which the jury reasonably could find that the defendant in fact believed that it was necessary to kill his adversary to protect himself from death or great bodily harm, the defendant is not entitled to have the jury instructed on self-defense. *State v. Rawley,* 237 N.C. 233, 74 S.E. 2d 620 (1953). It is for the court to determine in the first instance as a matter of law whether there is any evidence that the defendant reasonably believed it to be necessary to kill his adversary in order to protect himself from death or great bodily harm. *See State v. Johnson,* 166 N.C. 392, 81 S.E. 941 (1914). If there is no evidence that the defendant in fact formed such a reasonable belief, then there is no evidence of self-defense and the issue should not be submitted to or considered by the jury. On the other hand, the defendant is entitled to an instruction on self-defense when there is any evidence in the record that it was necessary or reasonably appeared to be necessary to kill in order to protect himself from death or great bodily harm. *State v. Spaulding,* 298 N.C. 149, 257 S.E. 2d 391 (1979). In other words, before the defendant is entitled to an instruction on self-defense, two questions must be answered in the affirmative: (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable? If both queries are answered in the affirmative, then an instruction on self-defense must be given. If, however, the

evidence requires a negative response to either question, a self-defense instruction should not be given.

In the present case, there was no evidence which would have supported a finding that the defendant in fact formed a belief that it was necessary for him to kill Marshburn in order to protect himself from death or great bodily harm. Nor was there evidence which would have supported a finding that any such belief was reasonable. Therefore, the trial court erred in giving the jury any instructions relative to self-defense. This error was favorable to the defendant and clearly harmless to him beyond a reasonable doubt, since it resulted in the jury giving consideration to acquittal upon a ground which the defendant was not entitled to have the jury consider. When a trial court undertakes to instruct the jury on self-defense in a case in which no instruction in this regard is required, the gratuitous instructions on self-defense are error favorable to the defendant even though they contain misstatements of law which would constitute reversible error in a case in which instructions on self-defense were required by the evidence. *See State v. Church*, 229 N.C. 718, 51 S.E. 2d 345 (1949). As the defendant in the present case was not entitled to any jury instructions on self-defense, any mistakes by the trial court in its instructions on self-defense were, at worst, harmless error not necessitating a new trial. *State v. Boone*, 299 N.C. 681, 263 S.E. 2d 758 (1980).

[2] We turn now to that portion of the defendant's argument in support of his Motion for Appropriate Relief in which he contends that the trial court committed reversible error during his original trial by instructing the jury in such manner as to place the burden on him to prove that the killing was in the heat of passion and therefore without malice. We find this assignment without merit.

In instructing the jury with regard to the element of malice, the trial court stated throughout the instructions that malice is implied in law from an intentional killing with a deadly weapon. The trial court also instructed the jury that should they find that the defendant intentionally inflicted the wounds which caused Marshburn's death, a presumption of unlawfulness and malice would arise and that an unlawful killing with malice is murder in the second degree. The trial court further instructed the jury,

that if they so found, the burden then would be upon the defendant to satisfy them of the absence of malice to reduce the homicide from murder in the second degree to manslaughter.

The defendant contends and we agree that there was some evidence justifying an instruction concerning heat of passion killing on sudden provocation and a resulting absence of malice. This being the case, any presumption of malice arising from a finding that the defendant intentionally inflicted the fatal wounds with a deadly weapon disappeared and the State was entitled to no presumption. *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *reversed on other grounds*, 432 U.S. 233, 53 L.Ed. 2d 306, 97 S.Ct. 2339 (1977). The defendant contends that the action of the trial court in placing the burden upon him to satisfy the jury that the killing was without malice tainted his conviction of murder in the first degree and required the Superior Court to grant his Motion for Appropriate Relief and award him a new trial. We do not agree.

Any error in the jury instructions placing the burden of persuasion on the defendant to show absence of malice was cured by the jury's verdict of murder in the first degree.[3] *State v. Fowler*, 285 N.C. 90, 203 S.E. 2d 803 (1974); *State v. Freeman*, 275 N.C. 662, 170 S.E. 2d 461 (1969). The holding in *Mullaney* was intended to cure those situations in which a presumption of malice unfairly relieved the State of the burden of proving the malice which distinguishes murder in the second degree from manslaughter when there was some evidence tending to show a mitigating circumstance negating malice. We have held that when, as in the present case, there is some evidence of "heat of passion on sud-

---

3. Although the jury did not indicate the theory upon which they returned the verdict of guilty of murder in the first degree against the defendant, we assume for our purposes here that the verdict represented a finding of premeditated and deliberate murder in the first degree. This presumption is, of course, favorable to the defendant. To assume that the conviction of murder in the first degree was based upon the theory that the killing occurred during the perpetration or attempt to perpetrate a felony, would make the trial court's allocation of the burden of proof in regard to elements such as premeditation, deliberation and malice irrelevant and harmless, as none of these elements are elements of the crime of murder in the commission or attempted commission of a felony. *Smith v. State*, 244 Ga. 814, 262 S.E. 2d 116 (1979); *Street v. Warden*, 423 F. Supp. 611 (D. Md. 1976), *aff'd*, 549 F. 2d 799 (4th Cir. 1976) (unpublished opinion), *cert. denied*, 431 U.S. 906, 52 L.Ed. 2d 390, 97 S.Ct. 1700 (1977).

den provocation (which negates malice) then in order to prove the existence of malice the State must prove the absence of heat of passion beyond a reasonable doubt." *State v. Jones,* 299 N.C. 103, 109, 261 S.E. 2d 1, 6 (1980). The State met this requirement in the present case when it proved to the jury beyond a reasonable doubt that the defendant was guilty of murder in the first degree. Murder in the first degree is the unlawful killing. of a human being with malice and *with premeditation and deliberation,* and the trial court so instructed the jury. The term "premeditation" means thought out beforehand for some length of time. A killing in the heat of passion is a killing *without premeditation. Id.; State v. Jennings,* 276 N.C. 157, 161, 171 S.E. 2d 447, 449-50 (1970). When the jury found beyond a reasonable doubt that the defendant killed his victim with premeditation, they also necessarily found beyond a reasonable doubt that the State had shown that the defendant did not act in the heat of passion. The trial court at all times correctly emphasized that the State must bear the burden of proving beyond a reasonable doubt premeditation on the part of the defendant, which would negate the possibility of his acting in the heat of passion. The trial court placed this burden upon the State without the benefit of any presumption in its favor.

Similarly, the term "deliberation" means "an intention to kill, executed by the defendant in *a cool state of the blood,* in furtherance of a fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose, and *not under the influence of a violent passion, suddenly aroused* by some lawful or just cause or legal provocation." *State v. Benson,* 183 N.C. 795, 798, 111 S.E. 869, 871 (1922) (emphasis added) (quoted with approval in *State v. Biggs,* 292 N.C. 328, 337, 233 S.E. 2d 512, 517 (1977) ). The State did not enjoy the benefit of any presumption in carrying its burden of proving beyond a reasonable doubt the deliberation on the part of the defendant necessary to support a conviction for murder in the first degree. Quite the contrary, the trial court specifically instructed the jury on two occasions that, in order to find deliberation on the part of the defendant, they must be satisfied beyond a reasonable doubt that the killing was done "in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge or to accomplish some unlawful purpose and not under the influence of a violent passion suddenly aroused by

some lawful and just cause or legal provocation." Having twice instructed the jury in this manner, the trial court went on to instruct them that, if they found the killing was executed in the heat of passion, they must find it was not the result of deliberation by the defendant. The trial court in no way indicated to the jury that any presumption arising from the intentional infliction of fatal wounds with a deadly weapon could be considered in determining whether the defendant acted with deliberation. Instead, the trial court more than once specifically instructed the jury that the State must prove those things necessary to establish deliberation beyond a reasonable doubt and that the burden of proof remained with the State. The jury convicted the defendant of murder in the first degree and thereby found beyond a reasonable doubt that the defendant acted with deliberation and premeditation and not in the heat of passion.

When a jury reaches a verdict finding a defendant guilty of murder in the second degree, the presumption of malice arising from the intentional infliction of fatal injuries with a deadly weapon may be a decisive factor in the jury's verdict. In those cases, the principles of *Mullaney* apply, and it is reversible error to require the defendant to carry the burden of satisfying the jury that his acts were in the heat of passion suddenly aroused and without malice.

In cases in which the defendant is convicted of premeditated and deliberate murder in the first degree, however, the State has not relied upon a mere presumption of malice. In finding the defendant guilty beyond a reasonable doubt of the willful, deliberate and premeditated killing of the victim, the jury in the present case necessarily rejected *beyond a reasonable doubt* the possibility that the defendant acted in the heat of passion. *Dorsey v. Maryland,* 278 Md. 221, 362 A. 2d 642 (1976); *Evans v. Maryland,* 28 Md. App. 640, 349 A. 2d 300 (1975); *Street v. Warden,* 423 F. Supp. 611 (D. Md. 1976), *aff'd,* 549 F. 2d 799 (4th Cir. 1976) (unpublished opinion), *cert. denied,* 431 U.S. 906, 52 L.Ed. 2d 390, 97 S.Ct. 1700 (1977).

> Phrased otherwise, in proving the elements of first degree murder beyond any reasonable doubt in the jurors' minds, the state necessarily disproved manslaughter beyond a reasonable doubt. Accordingly, the gist of *Mullaney v.*

*Wilbur,* supra, that the state prove all elements of an offense beyond a reasonable doubt, is satisfied in fact. And, any arguable error in the jury instructions was harmless beyond a reasonable doubt.

*Wilkins v. Maryland,* 402 F. Supp. 76, 80 (D. Md. 1975) (citations omitted), *aff'd,* 538 F. 2d 327 (4th Cir. 1976), *cert. denied,* 429 U.S. 1044, 50 L.Ed. 2d 757, 97 S.Ct. 747 (1977). Therefore, we find that the instructions of the trial court with regard to the presumption of malice arising from the defendant's intentional infliction of fatal wounds with a deadly weapon constituted error which was harmless beyond a reasonable doubt.[4] For this reason, the defendant's Motion for Appropriate Relief was properly denied.

[3]　Until recently the procedures and standards to be employed in reviewing a collateral attack upon a criminal conviction were prescribed in our former Post-Conviction Hearing Act, G.S. 15-217 through G.S. 15-222, and cases decided thereunder. E.g, *State v. White,* 274 N.C. 220, 162 S.E. 2d 473 (1968); *Branch v. State,* 269 N.C. 642, 153 S.E. 2d 343 (1967); *State v. Graves,* 251 N.C. 550, 112 S.E. 2d 85 (1960); *State v. Wheeler,* 249 N.C. 187, 105 S.E. 2d 615 (1958); *State v. Cruse,* 238 N.C. 53, 76 S.E. 2d 320 (1953); *Miller v. State,* 237 N.C. 29, 74 S.E. 2d 513 (1953). Since the statutes comprising our former Post-Conviction Hearing Act have now been repealed, neither those statutes nor cases decided thereunder are now authoritative with regard to the procedures and standards used in reviewing collateral attacks upon criminal convictions. 1977 N.C. Sess. Laws, ch. 711, §§ 33 and 39. The procedures and standards to be used in such collateral attacks are now set forth in Article 89 of Chapter 15A of the General Statutes of North Carolina, G.S. 15A-1411 through G.S. 15A-1422. The statutes comprising Article 89 took effect on 1 July 1978, but specifically were made fully retrospective without regard to when a defendant's guilt was established or when judgment was entered against him. 1977 N.C. Sess. Laws, ch. 711, § 39. Further, the motion for appropriate relief provided for by Article 89 was intended by the legislature to replace motions in arrest of judgment, motions to

---

4. As we have found any errors in the defendant's original trial to be harmless, we need not address his assignment and contentions relative to the failure of his counsel, during the direct appeal of his conviction, to raise such errors as grounds for a new trial.

set aside the verdict, motions for new trial, post-conviction proceedings, *coram nobis* and all other post-trial motions, but was not intended as a bar to relief by writ of habeas corpus. G.S. 15A-1411(c). Therefore, the procedures and standards to be employed with regard to collateral attacks upon criminal convictions, such as the defendant's Motion for Appropriate Relief in the present case, are controlled by the statutes comprising Article 89, G.S. 15A-1411 through G.S. 15A-1422.

[4] We turn now to those portions of Article 89, Chapter 15A which control our review of the Superior Court's Order denying the defendant's Motion for Appropriate Relief in the present case. Ordinarily, a motion for appropriate relief must be made after the verdict but not more than ten days after entry of judgment. G.S. 15A-1414. Certain grounds for appropriate relief set forth in G.S. 15A-1415 may, however, be asserted without limitation at any time after the verdict. The list of such grounds contained in G.S. 15A-1415 is exclusive and no other ground asserted by a defendant will support a motion for appropriate relief made more than ten days after the entry of judgment. G.S. 15A-1415(b). Included among the grounds which a defendant may assert by a motion for appropriate relief made more than ten days after judgment is the ground that the defendant's "conviction was obtained in violation of the Constitution of the United States or the Constitution of North Carolina." G.S. 15A-1415(b)(3). In the present case, the defendant made his Motion for Appropriate Relief more than ten days after the entry of judgment. The motion was not subject to summary denial on this basis, however, as the defendant asserted that his conviction was obtained unconstitutionally which is one of the grounds for appropriate relief which may be asserted without limitation as to time. Thus, the Superior Court was required to consider the merits of his motion.

[5] The defendant having stated with specificity in his motion the manner in which he asserted that his conviction was obtained in violation of the Constitution of the United States, he was entitled to a hearing on questions of law or fact arising from the motion. G.S. 15A-1420(c)(1). At the hearing, the defendant had the initial burden of going forward and of showing the existence of the asserted ground for relief. As the defendant's petition presented only questions of law arising from the record of his original trial for the Superior Court's determination, the Superior

State v. Bush

Court was required to determine the motion without an evidentiary hearing. G.S. 15A-1420(c)(3). Even after a showing by the defendant that the asserted ground for relief existed,[5] the Superior Court was still required pursuant to G.S. 15A-1420(c)(6) to deny him any relief "unless prejudice appears, *in accordance with G.S. 15A-1443*." G.S. 15A-1420(c)(6) (emphasis added). In other words, the defendant was required to show the existence of the error asserted as a ground for relief and also to show "prejudice."

The term "prejudice" now has two different meanings in cases in which post-conviction relief is sought by way of a motion for appropriate relief. The term "prejudice" is defined in G.S. 15A-1420(c)(6) by cross-reference to and incorporation of G.S. 15A-1443. If the error asserted in the motion for appropriate relief does not arise under the Constitution of the United States, then the definition of "prejudice" traditionally used in collateral attacks on convictions applies. In these cases the burden is upon the defendant to show a reasonable possibility that a different result would have been reached at his trial had the asserted error not been committed. G.S. 15A-1443(a). If, however, the error asserted in the motion for appropriate relief is shown by the defendant to exist and involves a violation of the defendant's rights under the Constitution of the United States, the State must bear the burden of demonstrating that the error was harmless beyond a reasonable doubt. G.S. 15A-1443(b). Such constitutional errors are deemed prejudicial unless they are found harmless beyond a reasonable doubt.[6] Id.

---

5. We have assumed *arguendo* throughout this opinion that the instructions of the trial court during the defendant's original trial placed an unconstitutional burden of proof upon the defendant with regard to self-defense and the absence of malice resulting from a killing in the heat of passion. *Infra* n. 2. Therefore, we also assume *arguendo* that the defendant showed the existence of the asserted ground for relief.

6. The use of this latter definition of "prejudice" in the context of a statute providing for collateral attacks upon criminal convictions is entirely new to the law of this jurisdiction and appears to provide relief to convicted criminal defendants in excess of that previously provided by this Court or the Supreme Court of the United States. In the recent case of *United States v. Frady*, 456 U.S. 152, 71 L.Ed. 2d 816, 102 S.Ct. 1584 (1982), the Supreme Court of the United States announced the standard it would apply under 28 U.S.C. § 2255 in reviewing collateral attacks upon criminal convictions. There, the Supreme Court of the United States held that a convicted defendant must show both cause excusing his failure to raise the asserted errors on direct appeal and "actual prejudice" resulting from the errors.

State v. Bush

When post-conviction relief is sought by way of a motion for appropriate relief in the Superior Court, that court ordinarily must make findings of fact and conclusions of law in its order granting or denying relief. In those cases in which appellate review of rulings on such motions properly may be undertaken by this Court, we are bound by the findings of fact made by the Superior Court if they are supported by evidence in the record. *See Branch v. State*, 269 N.C. 642, 153 S.E. 2d 343 (1976) (applying our former Post-Conviction Hearing Act); *State v. Wheeler*, 249 N.C. 187, 105 S.E. 2d 615 (1958) (same). The Superior Court's conclusions of law based upon its findings of fact are subject to our review. *Id.* In the present case, the Superior Court did not make extensive findings or conclusions in its Order denying the defendant's Motion for Appropriate Relief and instead primarily relied upon its conclusion that the facts as stated by the defendant in his motion did not entitle him to any form of relief. Where as here the record reveals that the determinative facts were and are uncontested and that the errors complained of were harmless beyond a reasonable doubt as a matter of law, it is unnecessary for us to remand the case for further findings of fact or conclusions of law by the Superior Court. It is sufficient that we determine, as we have here, that the Order of the Superior Court denying the defendant's Motion for Appropriate Relief was required as a matter of law in light of the uncontested operative facts.

In the present case the defendant asserted errors involving a violation of his rights under the Constitution of the United States. Such errors must be deemed prejudicial unless they were harmless beyond a reasonable doubt. We have determined, for

---

456 U.S. at 167, 71 L.Ed. 2d at 830, 102 S.Ct. at 1594. Under this standard, the defendant has "the burden of showing not merely that the errors at his trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." 456 U.S. at 170, 71 L.Ed. 2d at 832, 102 S.Ct. at 1596.

The definitions of the term "prejudice" contained in G.S. 15A-1443 were originally intended to apply only to direct appeals of criminal convictions. By adopting and incorporating those definitions by reference as a part of G.S. 15A-1420(c)(6), and making them also apply to collateral attacks upon convictions, the General Assembly has provided benefits to convicted criminal defendants in excess of those already provided them by the Constitution of the United States and the Supreme Court of the United States. This the General Assembly in its wisdom is free to do.

reasons previously set forth, that any errors in the trial court's instructions during the defendant's original trial relative to self-defense were favorable to the defendant or, at worst, harmless beyond a reasonable doubt. We have also determined that any errors in the trial court's instructions with regard to the presence or absence of malice were rendered harmless beyond a reasonable doubt by the jury verdict of guilty of murder in the first degree. The defendant having received a fair trial free of prejudicial error, the Order of the Superior Court denying his Motion for Appropriate Relief must be and is

Affirmed.