STATE OF NORTH CAROLINA v. MICHAEL ANTHONY WILLIAMS

No. 839SC131

(Filed 20 December 1983)

Criminal Law § 23.1— acceptance of negotiated guilty plea—failure to inform defendant of statutory matters—absence of finding that plea was voluntary—harmless error

The trial court's violation of G.S. 15A-1022 and defendant's constitutional rights by accepting defendant's negotiated plea of guilty without personally

addressing defendant and advising him of the matters set forth in G.S. 15A-1022 and without making an affirmative finding that his plea was voluntarily and intelligently entered constituted harmless error beyond a reasonable doubt. G.S. 15A-1026.

APPEAL by defendant from *Bailey, Judge.* Judgment entered 11 August 1982 in Superior Court, VANCE County. Heard in the Court of Appeals 18 October 1983.

*Attorney General Edmisten by Assistant Attorney General John C. Daniel, Jr., for the State.*

*Edmundson & Catherwood by John W. Watson, Jr., and Robert K. Catherwood for defendant appellant.*

BRASWELL, Judge.

What is error? Does the failure to scrupulously follow statutory procedure when taking a guilty plea automatically entitle the defendant to a new trial or other relief? Can a plea of guilty be tied down in a box that is secured with only one color of cord? When is error to be deemed prejudicial and reversible or harmless and upheld?

In his book "The Judicial Process" Judge Ruggero J. Aldisert commented that "[a] reviewing court's function is to determine whether a trial court committed error of sufficient magnitude to require that its judgment be reversed or vacated." R. Aldisert, "The Judicial Process" at 706 (1976). As expressed long ago in *Cherry v. Davis,* 59 Ga. 454, 456 (1877), "Wrong directions which do not put the traveler out of his way, furnish no reasons for repeating the journey." These views show a growth in the law from a rule that any error compels automatic reversal "to encompass a rule tolerating 'harmless error.'" *Aldisert, supra* at 717.

In the case before us a negotiated plea of guilty to three counts of felonious breaking or entering and larceny resulted in the defendant receiving an active sentence of imprisonment of six years. The six years ran together with a three-year sentence imposed at the same term of court following a jury conviction in a related felonious breaking or entering case. Defendant's counsel for trial and on appeal are members of the same privately-employed law firm.

In the course of the acceptance by the court of the negotiated pleas of guilty the trial judge did not personally talk with the defendant concerning the matters covered in G.S. 15A-1022. In a superior court it is error for a trial judge in the process of accepting a plea of guilty not to:

(1) address the defendant personally,

(2) inform him of his right to remain silent,

(3) determine that the defendant understands the nature of the charge,

(4) inform him of his right to plead not guilty,

(5) inform him that the guilty plea waives his right to a trial by jury and to be confronted by witnesses against him,

(6) determine if he is satisfied with his representation by counsel, and

(7) inform him of maximum and mandatory minimum sentence consequences, including the maximum possible from consecutive sentences. G.S. 15A-1022(a).

Under section (b) of the same statute, the judge is required to inquire of the prosecutor, the defense counsel, and the defendant personally whether there were any prior plea discussions and what the terms were of the plea arrangement, and whether any improper pressure had been exerted to induce the plea arrangement. Also, "[t]he judge may not accept a plea of guilty . . . from a defendant without first determining that the plea is a product of informed choice." G.S. 15A-1022(b). A violation of section (b) is error. *See also State v. Bush*, 307 N.C. 152, 167, 297 S.E. 2d 563, 573 (1982).

Another pertinent statute is G.S. 15A-1026 which requires a verbatim record of the proceeding at which the guilty plea is entered. "This record must include the judge's advice to the defendant, and his inquiries of the defendant, defense counsel, and the prosecutor, and any responses." *Id.* When plea arrangements are not in writing, "the judge must require that the terms of the arrangement be stated for the record and that the assent of the defendant, his counsel, and the prosecutor be recorded." *Id.* Here, the court reporter did make a verbatim record of the guilty plea

and sentencing proceedings and they are a part of the record before us.

Defendant petitioned this court pursuant to G.S. 15A-1444(e) for a writ of certiorari on 1 November 1982 to review the judgment of 11 August 1982 of Trial Judge James H. Pou Bailey. Certiorari was allowed on 17 November 1982.

In the companion case, Vance County Superior Court No. 82CRS2611, the defendant appealed to this Court his jury conviction of felonious breaking or entering of the Medical Arts Pharmacy. A different panel of judges has now heard that appeal and has entered its opinion finding no error. *State v. Williams*, 65 N.C. App. 383, --- S.E. 2d --- (filed 6 December 1983). In that case the sentence on 11 August 1982 was for the presumptive term of three years. It is that case with which the sentences in these negotiated pleas of guilty run concurrently.

The rest of the story is as follows: The defendant Williams and two codefendants were charged with breaking or entering and larceny of two lakeside cabins at Kerr Lake, breaking or entering and larceny of the office of Dr. P. R. Reddy, and breaking or entering and larceny of the Medical Arts Pharmacy. On Williams' motion the cases and codefendants were severed for trial. Williams was tried separately for the charge of breaking or entering of the Medical Arts Pharmacy and found guilty by the jury. The State had dismissed the larceny count. The two codefendants testified against Williams.

After the discharge of the jury and a recess, the court took up the matter of sentencing in the just completed Medical Arts Pharmacy case. During general comments made by court, prosecutor, and defense counsel concerning an appropriate sentence in the jury verdict case, the prosecutor indicated for the first time that the State would probably try the defendant "on at least two other charges." When the court subsequently inquired whether "[t]he evidence is going to be about the same," defense counsel replied, "Yes, sir, it would be, the evidence would be." This discussion came after the court had said the defendant had charges of breaking, entering, and larceny pending in three other cases and that he assumed that these charges probably concerned "the doctor's office and the two cabins." Defense counsel replied, "Yes, sir, that is correct." [The recitation of the evidence in *State*

*v. Williams, supra* (filed 6 December 1983), refers to the present case before us and discloses that the defendant was cross-examined about these same charges.]

Mr. Waters, the District Attorney, was heard on a suggestion. He asked for the defendant to be placed "in custody during the evening and give [defense counsel] an opportunity to discuss with us the other charges, and perhaps with his client we may be able to present some other proposal to the Court in the morning." Although Mr. Edmundson indicated that he thought he could report back to the court "this afternoon" by 5:00, the judge allowed the parties an overnight recess.

At 9:30 a.m., 11 August 1982, the following morning the defendant and all counsel were present in open court. After an unrecorded bench conference with the District Attorney and defense counsel, the sentence proceeding resumed. We now copy verbatim from the record the remainder of the proceedings so that they will appear in context. Mr. Baskerville is the Assistant District Attorney who prosecuted the case; Mr. Edmundson is the defense counsel. The quotation begins after the mention by the court of the docket number in which the jury verdict was delivered.

MR. BASKERVILLE: That is correct, Your Honor. And Mr. Edmundson and myself have entered into negotiations whereby the defendant is to plead guilty to the remaining charges on the docket, Your Honor, and would receive a six year sentence.

THE COURT: I have agreed to that already. Anything more you wanted to say about it, Mr. Edmundson?

EXCEPTION NO. 1.

MR. EDMUNDSON: Your Honor, as I related to the Court yesterday, this defendant was involved in an automobile accident. At the time he suffered right apparently some serious brain damage, and I have an out-patient report from Duke University Medical Center Out-Patient Department, and I would propose to ask the Court to allow this to go along with his commitment papers.

THE COURT: I will be glad to do that.

MR. EDMUNDSON: So that he can receive treatment.

THE COURT: I will be glad to do that, and ask that it be attached to the one that goes to the Department of Corrections.

MR. EDMUNDSON: Shall I give it to you?

THE COURT: Just give it to the Clerk. That will be fine. Whichever copy goes to the Department of Corrections, you just attach it. You better run off some copies and attach it to all commitments.

Anything more, Mr. Edmundson?

MR. EDMUNDSON: No, sir, that's it.

THE COURT: All right, let him stand up. In Case Number 82 CRS 2608, the defendant having been found guilty of breaking and entering by a jury, the judgment of the Court is that the defendant be confined in the custody of the Department of Correction of the State of North Carolina for a term of three years. That is the presumptive sentence.

And in Case Number 82 CRS 2609, the defendant having entered a plea of guilty to breaking and entering and larceny, the judgment of the Court is that the defendant be confined the custody of the Department of Corrections of the State of North Carolina for a term of three years, to commence at the expiration of the sentence imposed in 82 CRS 2608. That also is the presumptive sentence, and it is also entered as a part of a negotiated plea, which should show.

EXCEPTION NO. 2.

In Cases Number 82 CRS 2610 and 82 CRS 2611, that all counts be consolidated for the purposes of punishment. The judgment of the Court is that the defendant be confined in the custody of the Department of Correction for a period of six years to run concurrently with the sentences imposed in 2608 and 2609. This is also the presumptive sentence.

No, correction, this is also a sentence entered as a result of a plea bargain.

EXCEPTION NO. 3.

All right. That's six years.

MR. EDMUNDSON: Yes, sir.

THE COURT: Fixed up so that nobody on earth can ever upset it on appeal. I don't think that's intended to be that way.

MR. EDMUNDSON: Yes, sir, thank you, Your Honor.

THE COURT: All right, he's in custody.

EXCEPTION NO. 4.

We note that the defendant acknowledges the occurrence of the plea negotiations and his plea of guilty in his verified petition for writ of certiorari:

> Following plea negotiations, Mr. Edmundson and the District Attorney's office indicated that an agreement had been reached. Michael Anthony Williams pled guilty to 82-CRS-2609, receiving a three year sentence; and to 82-CRS-2610 and 82-CRS-2608, for which he received a six year sentence. All sentences were to run concurrently for a period of six years.

The brief presents two questions for our review: (1) Did the trial court err in failing to determine that the defendant's guilty pleas were freely and voluntarily entered and the product of informed choice in violation of his constitutional rights? (2) Did the trial court commit error when it failed to safeguard the defendant's rights under G.S. 15A-1022 which will entitle the defendant to replead? We answer no to both questions for the reasons that follow.

Upon arrival of the case in the appellate division the burden is upon the criminal defendant not only to show error but to show prejudicial error. As manifested by our Supreme Court in *State v. Pope*, 257 N.C. 326, 335, 126 S.E. 2d 126, 133 (1962), "A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." Additionally, the court in *Pope* asserted that "[i]n our opinion rules of mathematical certainty and rigidity cannot be

applied to the sentencing process. Justice may be served more by the substance than the form of the process. We prefer to consider each case in the light of its circumstances." *Id.* at 334, 126 S.E. 2d at 132.

The defendant alleges that the trial court violated his federal constitutional rights, as laid down in *Boykin v. Alabama*, 395 U.S. 238, 23 L.Ed. 2d 274, 89 S.Ct. 1709 (1969), by failing to affirmatively find on the record that his plea was voluntarily and intelligently made. While we recognize that a violation of the *Boykin* principles is error, this realization does not complete our task. Moreover, we note the applicability of what our Supreme Court said in *State v. Heard and Jones*, 285 N.C. 167, 172, 203 S.E. 2d 826, 829 (1974):

> We recognize that all Federal Constitutional errors are not prejudicial, and under the facts of a particular case, they may be determined to be harmless, so as not to require an automatic reversal upon conviction. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. Nevertheless, before a court can find a Constitutional error to be harmless it must be able to declare a belief that such error was harmless beyond a reasonable doubt. *Schneble v. Florida*, 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056; *Harrington v. California*, 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726; *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824; *Fahy v. Connecticut*, 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229; *State v. Cox and State v. Ward and State v. Gary*, 281 N.C. 275, 188 S.E. 2d 356; *State v. Jones*, 280 N.C. 322, 185 S.E. 2d 858; *State v. Swaney*, 277 N.C. 602, 178 S.E. 2d 399; *State v. Brinson*, 277 N.C. 286, 177 S.E. 2d 398.

Since the right to appeal is wholly statutory, according to *State v. Blades*, 209 N.C. 56, 182 S.E. 714 (1935), Article 91 of Chapter 15A of the North Carolina General Statutes provides the means for correction of error by the appellate division. G.S. 15A-1443 speaks to the existence and showing of prejudice. Section (a) addresses the defendant's burden when the error does not arise under the United States Constitution and requires a showing that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been

reached at the trial out of which the appeal arises." Section (b) addresses the State's burden of proof when the error arises under the United States Constitution and requires a demonstration of proof "beyond a reasonable doubt, that the error was harmless."

Here, it is obvious that the judge did not address the defendant personally nor inquire of him the things specified in G.S. 15A-1022. The positive directives of the statute were not performed by the judge. There is no finding that the plea is the result of the informed choice of the defendant. However, we find it more than interesting to note that nowhere in his brief, his statement of the facts, or in his petition for writ of certiorari, does the defendant ever make any allegation that the negotiated plea of guilty was unauthorized by him, or that his counsel did not inform him of all the plea arrangements prior to the entry of same in open court, or that the pleas of guilty as entered deviated in any way whatsoever from the sentences he had been led to believe he would receive. *See United States v. White*, 572 F. 2d 1007 (4th Cir. 1978). He accuses the court of not complying with the statute, and for this reason alone he says he should now have the benefit of repleading. He does not allege or cite any prejudice to him flowing from the results of the court's failure to follow the statute.

Also, there is no challenge of ineffective assistance of counsel. There is no factual challenge to the negotiated plea for an active sentence of six years. He does not accuse his counsel of pleading him guilty against his will. His privately-retained counsel was present at all times. Counsel did not object at trial to the failure to follow G.S. 15A-1022. Apparently, it was an oversight by all involved. Twice defense counsel was personally addressed by the court and asked if there was anything else for the judge's consideration. If counsel had not discussed the plea arrangement with the defendant and if counsel had not believed the plea was the informed voluntary choice of the defendant, he had the duty as an officer of the court, as well as the ethical duty to his client, to immediately inform the court of any misunderstanding. Counsel kept silent then, and in the subsequently filed papers has silently failed to suggest any lack of knowledge or full awareness in his client of all that was happening.

In effect, the defendant fails to allege any facts to show that the pleas of guilty were involuntary, only that the judge did not

ask him personally if they were voluntary. Even though it is error under the statute and constitution, *Boykin v. Alabama, supra,* for the court to fail to personally inquire of the defendant about his plea and to determine that the plea was voluntary and the informed choice of the defendant, under the total facts and circumstances of this case the error is harmless beyond a reasonable doubt. *See United States v. Hasting,* --- U.S. ---, ---, 76 L.Ed. 2d 96, 105, 103 S.Ct. 1974, 1979-80 (1983). There is no showing of a reasonable possibility that a different result could have or would have been reached at the trial level had the error not been committed at the trial and sentencing stage. *See State v. Bush, supra,* at 167, fn. 6, 297 S.E. 2d at 573. Additionally, in examining the effect of error, the record shows no cause to excuse his failure to raise the asserted error at trial in the presence of the judge, and there is no showing of any actual prejudice resulting from the error. *See United States v. Frady,* 456 U.S. 152, 71 L.Ed. 2d 816, 102 S.Ct. 1584, *reh'g denied,* 456 U.S. 1001, 73 L.Ed. 2d 1296, 102 S.Ct. 2287 (1982). We recognize the potential for harm that is present if this method of taking a plea of guilty becomes vogue. Yet, even though this method is not recommended and should not be followed, no basis in law exists on these facts to award a new trial or to allow the defendant to replead.

In our research we note some similarity between our case and *Moore v. United States,* 592 F. 2d 753 (4th Cir. 1979). In *Moore* the defendant had pled guilty to one count of a violation of the narcotic laws. He petitioned to set aside his plea and to vacate the sentence. In holding that the federal district court had violated the rule relating to guilty plea proceedings when it failed to explain special parole to the petitioner and imposed a sentence which exceeded what the petitioner had been advised, the Court of Appeals remanded the case only for the imposition of a sentence to correspond with what the defendant had been promised. In spite of procedural error, the Court said, "[W]e do not believe, however, that the error requires us to set aside the plea." *Id.* at 756. The court went on to point out that upon a reduction in sentence to correspond with the petitioner's understanding any prejudice would be cured. Because in the case before us there is no showing of a different sentence to be imposed nor a showing of any prejudice to be cured (only naked error to be cured), no remand is warranted.

We have also considered *Manley v. United States*, 588 F. 2d 79 (4th Cir. 1978). In contending that his pleas of *nolo contendere* to six counts of drug law violation were invalid, Manley alleged that "the trial court had 'misinformed Movant as to the range of allowable penalties,' " and asked to have his sentence vacated. *Id.* at 81. In recognizing that there had been incorrect information about sentencing given to the defendant by the trial judge, the United States Court of Appeals declared authoritatively that "[t]his does not establish a per se rule that every error in sentence advice will permit the accused later to upset his guilty plea." *Id.* at 81. In further clarification of its holding, the *Manley* court wrote:

> And we would note that, at least under former Rule 11 as it applied on the date of Manley's plea, the trial court's misstatement of the possible sentence is not irremediable error if the defendant has been correctly advised by his counsel. See *Hammond*, 528 F. 2d at 17, 18; *Pilkington*, 315 F. 2d at 209. To hold otherwise would be to reward " 'sandbagging' on the part of defense lawyers" who, while correctly advising their clients, might fail to advise the court of an easily redeemed error. *Id.* at 82.

In 1970 the former Chief Justice of the California Supreme Court, Roger J. Traynor, published a book through the Ohio State University Press, called "The Riddle of the Harmless Error." In 1971 Professor Willis L. M. Reese of Columbia reviewed Traynor's book in the Columbia Law Review. In his discussion of error Reese wrote of Traynor's analysis: "[C]ommon sense dictates that a reversal should not be the product of an error which did not affect the result reached by the judgment and which threatened no harm to the judicial system." Reese, Book Review, 71 Colum. L. Rev. 527, 528 (1971). Reese concluded that Traynor advocated "a two-barreled test" for error: "that an error should lead to reversal unless the appellate court believes it 'highly probable' both (a) that the error did not affect the result reached by the judgment and (b) that affirmance would not harm the judicial system as a whole, either by causing people to lose confidence in the system or by reason of the failure of the appellate court to use reversal as a means of imposing discipline upon the trial judge." *Id.* at 529. Reese then questions "whether any single test or formula can satisfactorily deal with all the various prob-

lems relating to harmless error that may be expected to arise." *Id.* In the situation before us we are of the opinion that the errors alleged did not affect the result reached in the plea arrangement. The sentences which were pronounced pursuant to this plea arrangement on the whole threatened no harm to the North Carolina judicial system.

On the whole record we find that there was a factual basis for the negotiated plea. The judge was the same person who had just heard the evidence in the jury trial on the same type of offense involving the same series of transactions. *See State v. Williams, supra* (filed 6 December 1983). Two codefendants had testified against Mr. Williams. The defendant's own counsel had informed the court in the presence of the defendant that the evidence would be the same for the doctor's office and the two cabin cases. *See State v. Dickins,* 299 N.C. 76, 261 S.E. 2d 183 (1980). Obviously, on 11 August 1982 the defendant was fully aware that he had been found guilty the previous day of a crime that could possibly result in his being sentenced to prison. In the face of this fact, it was wise policy for him and for his counsel to enter into plea negotiations on all remaining charges. The State has kept the arrangement. The defendant must now do the same.

No prejudicial error has been shown.

Affirmed.

Judges ARNOLD and HILL concur.