STATE OF NORTH CAROLINA v. ROBERT EDWARD REED, SR.

No. 130A88

(Filed 8 June 1989)

**Homicide § 19— murder—self-defense—testimony that defendant feared for his life excluded—error**

The trial court erred in a prosecution for first degree murder by refusing to allow defendant to testify that he feared for his life and the life of his family as the victim rushed toward him, and that the victim was violent when drunk.

Defendant was prevented from testifying to an essential element of his defense and, even though the State argued that the jury could have inferred from all the evidence that defendant feared for his life, defendant should have been allowed to testify explicitly to this matter which went to the heart of his case.

APPEAL as of right by the defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *Davis (James C.), J.,* at the 2 November 1987 Criminal Session of Superior Court, CAMDEN County. Heard in the Supreme Court 11 May 1989.

The defendant was tried for first degree murder. The State's evidence showed the defendant, the defendant's wife, the defendant's stepson, and Bobby Pearce were riding in an automobile from Durham to Moyock. The automobile was stopped in Camden County in order for Bobby Pearce to relieve himself. Approximately two minutes after Bobby Pearce left the automobile he called the defendant, who left the automobile. A few seconds later the stepson heard the sound of gunshots. The defendant then entered the automobile and proceeded with his wife and stepson to Moyock. They returned to Durham later in the day. The stepson testified that a pistol was thrown from the automobile before they reached Moyock.

Bobby Pearce's body was found two days later lying next to a ditch approximately ten feet from the road. He had been shot three times.

The defendant testified that when he left the automobile and walked toward Bobby Pearce, he saw that Pearce was holding a beer bottle in his left hand and a gun in his right hand. Pearce said to the defendant "you're first," and the two men struggled for the gun. The defendant testified that Bobby Pearce hit him in the head with the bottle and the gun fell from Pearce's hand. The two men rolled into the ditch. The defendant then ran up the embankment and picked up the gun. The defendant testified further that Bobby Pearce ran toward the defendant with his head down "like a bull," and the defendant shot him.

The defendant was convicted of first degree murder. The State conceded there were no aggravating circumstances and the defendant was sentenced to life in prison. He appealed.

*Lacy H. Thornburg, Attorney General, by G. Lawrence Reeves, Jr., Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for the defendant appellant.*

WEBB, Justice.

The defendant has brought forward six assignments of error. We shall discuss one of them. While the defendant was testifying on direct examination the following colloquy occurred:

Q: What happened, after you and Mr. Pearce rolled into the ditch?

A: I shook him loose; I got loose from him. I ran up from the embankment. I seen the gun and grabbed the gun. Bobby turned around and he was running at me with his head down. I knew he was going to hurt me. I picked up the gun and shot him.

Q: How many times did you shoot him?

A: As many times as the gun will click. I pulled the trigger on the gun as many times as it will click.

Q: Why do you say he was going to hurt you?

OBJECTION SUSTAINED

Q: How did you feel as Mr. Pearce was coming towards you?

OBJECTION SUSTAINED

The defendant made an offer of proof as to what his testimony would have been if the objections had not been sustained. It is as follows:

Q: Mr. Reed, how did you feel when you saw Bobby Pearce coming towards you behind the car?

A: I felt fearful of my life and the life of my family.

Q: Why did you fear for your life and the life of your family?

A: Bobby is a dangerous person. When he gets that drunk he's really violent.

In order to establish self-defense the jury must be satisfied that the defendant believed it was necessary to kill the deceased in order to save himself from death or great bodily harm. *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982). The defendant was prevented from testifying to an essential element of his defense, his fear for his life. This was error. We recently granted a new trial for a similar error in *State v. Webster*, 324 N.C. 385, 378 S.E. 2d 748 (1989).

The State contends that this was harmless error. It says that the defendant was allowed to testify, "I knew he was going to hurt me," and it would have been repetitious to allow the defendant to testify how he felt when Bobby Pearce was advancing toward him. The State says the jury could infer from all the evidence of the defendant that he feared for his life and he was not harmed by the exclusion of this testimony. We believe the defendant should have been allowed to testify explicitly to this matter which went to the heart of his case. The State also contends that the evidence against the defendant was strong and the physical evidence was inconsistent with the defendant's testimony. For these reasons the State says it would not have changed the outcome of the trial if the objection to the question had not been sustained. It is true that much of the evidence pointed to the guilt of the defendant. We believe, however, that if the defendant had been allowed to testify to a matter so crucial to his defense there is a reasonable possibility a different result would have been reached at the trial. *See* N.C.G.S. § 15A-1443(a) and *State v. Turner*, 268 N.C. 225, 150 S.E. 2d 406 (1966). This entitles defendant to a new trial.

We do not pass on the defendant's other assignments of error because the questions they raise may not recur at a new trial.

New trial.