STATE OF NORTH CAROLINA v. JAMES BENJAMIN BEST

No. 859SC1041

(Filed 18 March 1986)

**Homicide § 30.2— second degree murder—failure to submit voluntary manslaughter—no error**

In a second degree murder prosecution, the trial court did not err in failing to submit voluntary manslaughter as a possible verdict on the theory that defendant killed his victim in the heat of passion brought on by adequate provocation, since words alone are never sufficient provocation to mitigate second degree murder to voluntary manslaughter, or on the theory that defendant's evidence showed that he did not intend to kill deceased but merely to scare him off, since defendant intentionally shot the victim with a rifle at close range; however, the trial court should have instructed on voluntary manslaughter on the theory that defendant acted in self-defense but used excessive force where defendant testified that the victim had threatened to kill him and that immediately prior to the shooting, defendant heard a pistol cock after seeing the victim reach under the seat of his truck.

APPEAL by defendant from *Barnette, Judge.* Judgment entered 10 May 1985 in Superior Court, PERSON County. Heard in the Court of Appeals 3 March 1986.

On 4 December 1984 defendant was charged in a proper bill of indictment with first degree murder. The State presented evidence tending to show that on 5 September 1984 Louis Winstead and his family went to the farm of Bernard Obie to dig potatoes. While Winstead was plowing the potatoes defendant drove by the potato patch and waved to Winstead. He subsequently returned to a location near the potato patch with his tractor. Defendant's tractor started to have mechanical problems, and defendant then asked Winstead's daughter if she would go get some battery cables to start the tractor. When Winstead informed defendant that he did not have time to help, the parties became embroiled in an argument. During the argument defendant accused Winstead of being on his land. During the confrontation defendant was holding a rifle in his hand. Following the argument Winstead resumed plowing potatoes. Shortly thereafter Mr. Obie drove up in his truck. When Obie stopped his truck in front of defendant's tractor, defendant jumped up from behind the tractor, ran toward Obie's truck and fired one shot with his rifle. The shot struck Obie and he died before he could receive medical attention. Winstead also testified on direct examination that three or four

weeks prior to the shooting defendant told him that he had to kill Obie.

Defendant was arrested at his residence a short time thereafter, and the rifle used in the murder was found in a wooded area about 2/10 of a mile from where the shooting occurred. The assistant medical examiner testified that Obie died as a result of the gunshot wound, and at the time of his death had a blood alcohol concentration of .17.

Defendant presented evidence that he and his wife, Obie's daughter, moved to Person County from Washington, D.C., in 1974. Sometime prior to 1979 a dispute over land occurred between defendant and Obie. Because of this dispute sharp confrontations had occurred between defendant and Obie on several occasions. During these confrontations Obie had brandished a gun at defendant. Defendant also testified that on several occasions Obie had stated that he intended to kill defendant and had attempted to run over defendant on several occasions.

Defendant further testified that on 5 September 1984 he had seen Obie with a pistol on his side and a rifle and shotgun in the cab of his truck. Approximately two hours before the shooting defendant was sitting on the porch of a friend when Obie drove by and made gestures as if he were going to drive into the driveway. After this episode defendant went home and asked his wife what was bothering her father. After speaking with his wife defendant drove his tractor to the field where Winstead was working. Defendant denied having any confrontation with Winstead. Defendant testified that when he saw Obie coming down the road he attempted to get back to his house but that Obie drove his truck in front of defendant's tractor and cut off defendant's path. Defendant then stated that he told Obie that he was not bothering him, that he was just trying to get his tractor started. Defendant further testified that he then saw Obie reach down at his seat for something, and that Obie opened his truck door and called defendant a "black son of a bitch." Defendant testified that this statement paralyzed him and that he heard Obie cock a pistol. Defendant further testified that he fired one shot at Obie with the purpose of scaring him and started running. Defendant stated that the reason he ran after firing the shot was because he thought Obie was chasing him.

On rebuttal, the State presented evidence tending to show that prior to the shooting, defendant drove to his home, went inside and was very angry and then he came ou⁺ᵗᵉ and started yelling and pointing toward the potato patch where the Winsteads were located. At that time, he had a gun in his hand. State's evidence on rebuttal further showed that defendant never mentioned anything about a pistol prior to testifying and that no pistol was found at the scene of the shooting.

Defendant was convicted of second degree murder. From a judgment sentencing him to the presumptive term of 15 years imprisonment, defendant appealed.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Jo Anne Sanford, for the State.*

*Assistant Appellate Defender Leland Q. Towns for defendant, appellant.*

HEDRICK, Chief Judge.

The sole issue presented for review is whether the court erred in failing to submit voluntary manslaughter as a possible verdict. Defendant contends that this evidence supported submission of voluntary manslaughter on three theories: (1) that defendant killed Obie in the heat of passion brought on by adequate provocation; (2) that defendant's evidence showed that he did not intend to kill the deceased but merely to scare him off; and (3) that defendant acted in self defense except he used excessive force in repelling the deceased because he mistakenly believed that the deceased had a pistol.

The trial court must declare and explain the law arising from the evidence. If the evidence could convince the jury to convict the defendant of a lesser included offense, the court has a duty to charge on the lesser included offense. *See State v. Pearce,* 296 N.C. 281, 250 S.E. 2d 640 (1979).

Second degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Jenkins,* 300 N.C. 578, 268 S.E. 2d 458 (1980). This crime may be reduced to voluntary manslaughter upon a showing that defendant killed his victim in the heat of passion caused by provocation adequate to negate the element of malice. *State v. Burden,* 36

N.C. App. 332, 244 S.E. 2d 204, *disc. rev. denied,* 295 N.C. 468, 246 S.E. 2d 216 (1978). Words alone are never sufficient provocation to mitigate second-degree murder to voluntary manslaughter. *State v. Watson,* 287 N.C. 147, 214 S.E. 2d 85 (1975). The evidence presented by defendant is insufficient to establish that the killing was done in the heat of passion upon adequate provocation. Thus, his first theory must fail.

Defendant's second theory supporting an instruction on voluntary manslaughter also fails. Defendant produced no evidence from which a rational jury could find voluntary manslaughter under the theory that defendant did not intend to kill the victim when he intentionally shot at the victim with a rifle at close range.

Defendant's third theory supporting an instruction on voluntary manslaughter is compelling. Second degree murder may be reduced to voluntary manslaughter if a killing results from the use of excessive force in the exercise of self defense. Excessive force in the exercise of self defense has been described by our Supreme Court as that force used by "[a] defendant who honestly believes that he must use deadly force to repel an attack but whose belief is found by the jury to be unreasonable under the surrounding facts and circumstances. . . ." *State v. Jones,* 299 N.C. 103, 112, 261 S.E. 2d 1, 8 (1980). In the instant case, defendant testified that the victim had threatened to kill defendant and that immediately prior to the shooting defendant heard a pistol cock after seeing the victim reach under the seat. We cannot say that the evidence adduced at trial demonstrates as a matter of law that defendant did not have an honest belief that deadly force was necessary to repel the victim. The trial court held the same view of the evidence to the extent that it believed the evidence supported an instruction on self defense.

Whether excessive force was used in self defense is ordinarily a jury question. It is difficult to imagine a homicide case in which the evidence supports an instruction on self defense but not an instruction on voluntary manslaughter based upon an excessive force theory. *See State v. Thomas,* 184 N.C. 757, 114 S.E. 834 (1922). We hold that the trial court erred in failing to instruct the jury on voluntary manslaughter and order a new trial.

New trial.

Judges WEBB and PARKER concur.