STATE OF NORTH CAROLINA v. DARRYL SCOTT HUGHES

No. 8615SC256

(Filed 16 September 1986)

**Homicide § 28.1—** self-defense—refusal to give requested instruction—error

The trial court in a first degree murder case erred in refusing defendant's request that the jury be instructed concerning the law of self-defense where defendant presented evidence which could support a finding that he in fact believed it to be necessary to strike the victim with a baseball bat to protect himself from death or great bodily harm and that such a belief was reasonable where such evidence consisted of testimony by defendant that the victim came toward him "right fast" from out of a "pitch-black" area with a silver object which looked like a hawk-billed knife in his hand, and as he approached defendant, the heavily intoxicated victim threatened defendant.

APPEAL by defendant from *Farmer, Judge.* Judgment entered 16 October 1985 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 19 August 1986.

Defendant was charged in a bill of indictment with the first degree murder of Eugene Clinton Wagstaff. He entered a plea of not guilty. At trial, the State presented evidence which tended to show the following: On the evening of 14 August 1985, defendant and Lambert Nelson, Rodney Nelson, Mario Williamson, William Leath and George Robinson were drinking beer at the Rauhut Street playground. Defendant and several of the others, including Lambert Nelson and Mario Williamson, left the playground to go swimming at North Park. Their route to North Park took them past "the Jungle," a wooded area frequented by alcoholics. After climbing a fence at the park and swimming for approximately an hour, defendant and his companions left the park and walked back along Chandler Avenue, passing "the Jungle" a second time. As they passed the area, Eugene Wagstaff emerged from "the Jungle." Defendant suddenly grabbed a baseball bat out of Rodney Nelson's hands, and ran back to where Wagstaff was and hit him across the left side of the head with the baseball bat. Wagstaff grabbed his face, stumbled back and responded, "Go on, man, I ain't bothered you." Defendant then hit Wagstaff across the back, and he fell into some bushes. Lambert Nelson testified that he then told the defendant, "You shouldn't have done that, I'm going back down here to see what's wrong with him 'cause he ain't moving." The defendant replied, "Man, y'all better not go

back down there 'cause I'll kill him." Defendant pulled Wagstaff out of the bushes, picked him up and threw him back down on the ground. As the defendant and his friends left, the defendant kept repeating that he "don't play."

Lambert Nelson and Mario Williamson testified that they were between fifty and one hundred feet away from the defendant and Wagstaff at the time of the incident. They did not see Wagstaff make any movement toward the defendant nor did they see any weapons or objects in Wagstaff's hands.

The victim's body was discovered the next morning. The medical examiner testified that Wagstaff's death was caused by a blunt trauma to the head, a cause of death consistent with a blow from a blunt instrument. No knife or other weapon was discovered on or around Wagstaff's body.

Defendant testified in his own behalf. His testimony tended to show the following: Prior to leaving the Rauhut playground, defendant found a baseball bat. He took the bat with him to North Park; Mario Williamson also had a bat. After swimming, defendant and his companions began to walk back toward the playground. As they were passing "the Jungle," Eugene Wagstaff suddenly came out of a pitch-dark area. Williamson, Leath and the Nelsons ran, but defendant turned around to look. Wagstaff was walking "right fast" toward the defendant and holding a shiny object in his hand, which appeared to defendant to be a hawk-billed knife. Wagstaff approached the defendant saying, "Now that I've got you, ain't nowhere you can go, goddamn it." Defendant testified that he was scared for his life because he thought "he (Wagstaff) was probably—maybe he was, you know, going to do something to me," and that he struck Wagstaff once with the bat. Wagstaff fell into some weeds. When defendant rejoined his friends, someone suggested they check on Wagstaff to make sure he was alright. Defendant approached Wagstaff and said "Hey, man," to which Wagstaff grunted "Ugh" in response. Defendant grabbed Wagstaff by the biceps and the high part of his ankles, shook him, and pulled him out into a clearing. Defendant and his friends then left.

Defendant testified that he knew Wagstaff had a reputation for hanging out in "the Jungle" and staying drunk, and that Wagstaff was heavily intoxicated the night he died. He testified that

he did not intend to kill Wagstaff and that he hit Wagstaff because he was scared.

At the jury instructions conference, the trial judge denied defendant's requests to instruct on the law of perfect and imperfect self-defense. Defendant was found guilty of second degree murder and was sentenced to the presumptive term of fifteen years as a regular youthful offender. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Dolores O. Nesnow for the State.*

*Daniel H. Monroe for defendant appellant.*

MARTIN, Judge.

The issue dispositive of this appeal is whether the trial court erred when it refused defendant's request that the jury be instructed concerning the law of self-defense. We hold that defendant's evidence was sufficient to place the question of self-defense before the jury and that the failure of the court to instruct upon the law applicable thereto requires that defendant be granted a new trial.

Self-defense is a complete or "perfect" defense to homicide if it is established that at the time of the killing:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Bush*, 307 N.C. 152, 158, 297 S.E. 2d 563, 568 (1982). Imperfect self-defense arises when only elements (1) and (2) are established, in which case a defendant would remain guilty of at least voluntary manslaughter. "However, both elements (1) and (2) in the preceding quotation must be shown to exist before the defendant will be entitled to the benefit of either perfect or imperfect self-defense." *Id.* at 159, 297 S.E. 2d at 568.

A defendant is entitled to an instruction on self-defense if there is any evidence in the record which establishes that it was necessary or that it reasonably appeared to the defendant to be necessary to kill in order to protect himself from death or great bodily harm. *State v. Pate*, 62 N.C. App. 137, 302 S.E. 2d 286 (1983), *aff'd*, 309 N.C. 630, 308 S.E. 2d 326 (1983). When defendant's evidence is sufficient to support an instruction on self-defense, the instruction must be given even though the State's evidence is contradictory. *State v. Watkins*, 283 N.C. 504, 196 S.E. 2d 750 (1973). However, if the court determines as a matter of law that there is no evidence in the record from which the jury could find that the defendant reasonably could have believed it to be necessary to kill to protect himself from death or great bodily harm, then the defendant is not entitled to an instruction on self-defense. *Bush, supra.* When judging the sufficiency of the evidence the facts must be interpreted in the light most favorable to the defendant. *State v. McCray*, 312 N.C. 519, 324 S.E. 2d 606 (1985).

In *Bush*, the Supreme Court articulated a two-question test for judging the sufficiency of the evidence to support an instruction on self-defense:

(1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable? If both queries are answered in the affirmative, then an instruction on self-defense must be given. If, however, the evidence requires a negative response to either question, a self-defense instruction should not be given.

*Bush* at 160-61, 297 S.E. 2d at 569.

In the present case, defendant presented evidence which, when viewed in the light most favorable to defendant, could sup-

port a finding that he in fact believed it to be necessary to strike Wagstaff with the bat to protect himself from death or great bodily harm. Defendant testified that Wagstaff came toward him "right fast" from out of a "pitch-black" area with a silver object that looked like a hawk-billed knife in his hand. As he approached the defendant, the heavily intoxicated Wagstaff threatened, "Now that I've got you, ain't nowhere you can go, goddamn it," and continued toward defendant. According to defendant's evidence, Wagstaff's words and actions caused him to fear for his life because he thought the object might be a knife and that Wagstaff might be going to do something to him.

Defendant's testimony, if believed by a jury, is also sufficient to support a finding that such a belief was reasonable. Defendant presented at least some evidence from which the jury could conclude that Wagstaff was in fact armed and a threat to defendant's life or health. It was for the jury, and not for the court, to determine the reasonableness of defendant's belief, under the circumstances as they appeared to him. *See State v. Johnson*, 166 N.C. 392, 81 S.E. 941 (1914).

Both *Bush* queries must therefore be answered in the affirmative and it was error for the trial court to refuse to instruct the jury on self-defense.

In view of our decision, we need not address defendant's second assignment of error. For the reasons stated, defendant is entitled to a

New trial.

Chief Judge HEDRICK and Judge PHILLIPS concur.