STATE OF NORTH CAROLINA v. RAJOHN ALMANN CRUZ

No. COA09-386

(Filed 6 April 2010)

**Homicide— imperfect self-defense—instruction refused**

The trial court did not err by refusing to instruct the jury on voluntary manslaughter under a theory of imperfect self-defense where there was no evidence that defendant believed it necessary to kill the decedent in order to save himself from death or great bodily harm. The evidence clearly indicates that defendant initiated a fight, defendant was determined to win the fight, and defendant fired his gun in order to get away.

Judge ROBERT N. HUNTER, JR. dissenting.

Appeal by Defendant from judgments entered 29 May 2008 by Judge Stafford G. Bullock in Robeson County Superior Court. Heard in the Court of Appeals 17 September 2009.

*Duncan B. McCormick for Defendant-Appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Sandra Wallace-Smith, for the State.*

STEPHENS, Judge.

Rajohn Almann Cruz ("Defendant") appeals as a matter of right from his convictions for second-degree murder and assault with a deadly weapon inflicting serious injury.[1] On appeal, Defendant argues that the trial court erred when it refused his request for a jury instruction of voluntary manslaughter based on imperfect self-defense. After

---

1. Although Defendant gave notice of appeal from both judgments, Defendant's argument on appeal pertains solely to his conviction for second-degree murder.

review, we conclude that Defendant's evidence was insufficient to warrant a jury instruction on voluntary manslaughter based on imperfect self-defense, and thus uphold the judgments of the trial court.

## I. Factual Background and Procedural History

On 12 September 2005, Defendant was charged in a bill of indictment with first-degree murder, assault with a deadly weapon inflicting serious injury, and robbery with a dangerous weapon. He entered a plea of not guilty to all charges and was tried before a jury on 19 May 2008.

At trial, the State's evidence tended to show the following: Santiago Aquino Rivera ("Santiago") shared apartment A at 1004 Willow Street with Ignacio Tolentino ("Ignacio"), Julio Tolentino ("Julio"), and Renaut Lara Rayon ("Renaut"). Renaut's wife and Julio's wife and child also lived at the Willow Street apartment. Jorge Tolentino Santiago ("Jorge") and Raul Galvan Rivera ("Raul"), along with two other men, lived in apartment B of the Willow Street apartment.

On 7 May 2005 at about 7:00 a.m., Ignacio was sitting on his apartment porch when he saw Defendant running toward him with a gun. Upon noticing Defendant, Ignacio ran into the apartment and attempted to shut the door, but Defendant pushed the door open and went inside. Defendant demanded money, and Ignacio complied. Defendant demanded more money from Santiago who was then asleep on the couch in the living room. Defendant shot Santiago in the chest after Santiago told Defendant that he did not have any money. After shooting Santiago, Defendant shot Ignacio in the knee and beat him with the gun. Ignacio kicked Defendant in the stomach as Defendant attempted to search through Ignacio's pockets. During the scuffle, Ignacio knocked the gun out of Defendant's hand, but Defendant was able to retrieve the gun and pull the trigger; however, the gun did not fire.

While Defendant and Ignacio were fighting, Santiago walked down the hallway to the bedroom where Renaut and Julio were sleeping, whereupon he told Julio that Defendant was hitting his brother. Julio called the police, locked the apartment door to prevent Defendant from leaving. Defendant continued to beat Ignacio with the gun and the two men fought until Julio entered the room and began fighting also. Julio beat Defendant with the telephone while waiting for the police to arrive. Renaut retrieved a shotgun and

pointed it at Defendant. Defendant then let go of Ignacio. Renaut cocked the gun and Defendant begged Renaut not to shoot him.

Julio unlocked the door and looked outside to see if anyone had come with Defendant, at which point Defendant attempted to run out of the apartment. Julio pulled Defendant into the yard and Renaut picked up a piece of wood and hit Defendant. Ignacio, Renaut, Julio, Jorge, and at least one other unnamed man beat Defendant and prevented him from leaving. During the fight, Jorge took Ignacio's money from Defendant's hand.

When the officer arrived at the scene, the officer saw Defendant running away from the apartment. The officer ran toward Defendant, and Defendant refused to stop when the officer requested him to do so. Defendant stopped when the officer caught up to Defendant and repeated the order to stop. The officer called EMS after noticing that Defendant and the other men at the scene were bleeding. Defendant told the officer that he had been shot in the head; however, he only suffered a laceration over his right eye and a laceration to the back of his head. Santiago died at the scene from a gunshot wound to his heart.

Defendant's evidence tended to show the following: On 7 May 2005, at approximately 7:00 a.m., Defendant was walking on the street near Santiago and Ignacio's apartment building. As Defendant neared the corner, Santiago and Ignacio began to point at him, and one of the men came out into the yard and began to argue with Defendant. In order to defend himself, Defendant swung and tried to hit the man that approached him. Defendant testified that he fought with the man in the yard, on the porch, and in the doorway of the apartment.

While the men were fighting, someone hit Defendant with an unknown object in the back of the head. The blow to the head caused Defendant to close his eyes and left him dizzy. After being hit in the head, Defendant put his hand on his pistol but did not pull the gun out of his pocket. When Defendant opened his eyes, he saw a man holding and pointing a shotgun at his head. At this point, Defendant, thinking that he was going to be shot, closed his eyes and listened to the gun click as the man pulled the trigger. The gun did not fire. Defendant, in an attempt to get away from the men, pulled his pistol and fired a shot at the man holding the shotgun but was unsure whether he shot anyone. As Defendant attempted to leave the apartment, someone held Defendant and kicked him, whereupon Defendant fired another shot at the ground. The second shot hit the man who was holding Defendant in his leg.

After Defendant shot both men, he ran from the apartment but was hit in the face with a two-by-four stick by one of the other men living at the apartment. Defendant hit this man with his pistol, breaking it into two pieces. The two men continued to hold and beat Defendant until the police arrived. Defendant ran toward the police officer and complied with the officer's instructions to stop and sit down. Defendant denies robbing or attempting to rob the men at the apartment.

During the jury instruction conference, the following exchange took place between defense counsel, Mr. Foxworth, and the trial judge:

MR. FOXWORTH: You're going to charge on the self-defense?

THE COURT: I'm going to charge self-defense, but the self-defense that I'm going to be charging is going to only apply to premeditation and deliberation and second degree. It's not going to apply to felony murder, robbery or the felonious assault.

MR. FOXWORTH: And you'll give that[?]

THE COURT: Which one do you want me to give?

MR. FOXWORTH: The imperfect language is in the voluntary manslaughter.

THE COURT: No, sir, I'm not going to [give] involuntary [sic] manslaughter. It's going to be first degree murder by way of felony murder, premeditation and deliberation, or second degree murder or not guilty.

. . . .

MR. FOXWORTH: You're not going to instruct on self-defense, perfect and imperfect?

THE COURT: No, if you want me to do self-defense, it's going to be based on premeditation-deliberation or second degree.

MR. FOXWORTH: I understand that.

. . . .

THE COURT: What self-defense instruction do you want me to give?

MR. FOXWORTH: Perfect and imperfect.

**STATE v. CRUZ**

[203 N.C. App. 230 (2010)]

THE COURT: Number?

MR. FOXWORTH: 308.45.

THE COURT: That's the one I'll give.

MR. FOXWORTH: And the imperfect language is in the voluntary manslaughter because if they find imperfect, that's what he [sic] must find is voluntary if you find imperfect.

THE COURT: Which one of the instructions do you want me to give on self-defense?

MR. FOXWORTH: Which instruction?

THE COURT: Yes.

MR. FOXWORTH: I want you to give 308.45, which is perfect self-defense, but that's all it speaks of. It doesn't speak of imperfect, but I also am requesting the Court to give imperfect self-defense, which you said you were going to give.

THE COURT: Can you have imperfect self-defense in first degree murder?

MR. FOXWORTH: Yes, sir, I think you can.

THE COURT: I thought you just said that it relates to voluntary manslaughter?

MR. FOXWORTH: Well, it says if they find imperfect self-defense, then the courts have said then that's what the verdict has to be, voluntary manslaughter.

THE COURT: I'm going to give 308.45.

MR. FOXWORTH: So, you won't give imperfect self-defense?

THE COURT: I'm going to give 308.45 as it lends itself to premeditation-deliberation and second degree. I don't think you're entitled to it, but out of an abundance of caution I'm going to give it.

MR. FOXWORTH: But not imperfect.

THE COURT: Is that word there something you didn't quite understand?

MR. FOXWORTH: All right. But we'd just like the Court to note the exception.

THE COURT: Exception noted.

As shown in the transcript, the court noted that a self-defense instruction would be given with regard to the first-degree murder charge and second-degree murder charge only "out of an abundance of caution." At the jury instruction conference, the trial judge denied Defendant's request to instruct on voluntary manslaughter based on the law of imperfect self-defense as it applies to second-degree murder.

Defendant was found not guilty of robbery with a firearm, but guilty of second-degree murder and assault with a deadly weapon inflicting serious injury. On 29 May 2008, the trial court imposed an active term of imprisonment of 189 to 236 months for second-degree murder and a consecutive active term of 29 to 44 months imprisonment for assault with a deadly weapon inflicting serious injury. Defendant gave notice of appeal in open court.

## II. Voluntary Manslaughter Under a Theory of Imperfect Self-Defense

Defendant argues that the trial court erred in denying his request to instruct the jury on voluntary manslaughter based on imperfect self-defense. We disagree.

Our Court reviews a trial court's decisions regarding jury instructions *de novo. State v. Osorio,* ⸺ N.C. App. ⸺, ⸺, 675 S.E.2d 144, 149 (2009). The trial court must instruct the jury on self-defense "if there is any evidence in the record from which it can be determined that it was necessary or reasonably appeared to be necessary for [defendant] to kill his adversary in order to protect himself from death or great bodily harm." *State v. Bush,* 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982). Moreover, the trial court must provide a self-defense instruction if the above criteria is met "even though there is contradictory evidence by the State or discrepancies in the defendant's evidence." *State v. Revels,* ⸺ N.C. App. ⸺, ⸺, 673 S.E.2d 677, 680, *disc. review denied,* 363 N.C. 379, 680 S.E.2d 204 (2009). With regard to whether a defendant is entitled to a jury instruction on self-defense, the trial court must consider the admissible evidence in the light most favorable to the defendant. *State v. Hughes,* 82 N.C. App. 724, 727, 348 S.E.2d 147, 150 (1986).

> [B]efore the defendant is entitled to an instruction on self-defense, two questions must be answered in the affirmative: (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable? If both queries are answered in the affirmative, then an

instruction on self-defense must be given. If, however, the evidence requires a negative response to either question, a self-defense instruction should not be given.

*Bush,* 307 N.C. at 160-61, 297 S.E.2d at 569.

In the case at bar, the trial court instructed the jury on perfect self-defense, but refused to provide an instruction on imperfect self-defense. A defendant acts in perfect self-defense when the following four elements are present at the time of the killing:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*Revels,* —— N.C. App. at ——, 673 S.E.2d at 681 (internal citation and quotation marks omitted). An instruction on imperfect self-defense should be given where a defendant "reasonably believes it necessary to kill the deceased to save himself from death or great bodily harm even if defendant (1) might have brought on the difficulty, provided he did so *without* murderous intent, and (2) might have used excessive force." *State v. Mize,* 316 N.C. 48, 52, 340 S.E.2d 439, 441-42 (1986). Where there is no evidence supporting a lesser included offense, it is error for the trial court to instruct the jury on such. *See State v. Ray,* 299 N.C. 151, 163, 261 S.E.2d 789, 797 (1980) ("It is clear then that it is error for the trial court to submit as an alternative verdict a lesser included offense which is not actually supported by any evidence in the case.").

In *State v. Lyons,* 340 N.C. 646, 459 S.E.2d 770 (1995), our Supreme Court held that the defendant was not entitled to an instruction on voluntary manslaughter under a theory of imperfect self-defense where the evidence did "not tend to indicate that the de-

STATE v. CRUZ

[203 N.C. App. 230 (2010)]

fendant in fact formed a belief that it was necessary to kill the deceased, thereby entitling defendant to an instruction on imperfect self-defense." *Id.* at 663, 459 S.E.2d at 779. In *Lyons*, the defendant testified that he was afraid someone was breaking into his apartment when he heard the police banging on his door. *Id.* at 656, 459 S.E.2d at 775. The defendant testified that he decided to fire a "warning shot," and that he later found out that the shot had struck and killed a police officer. *Id.* On appeal, the defendant argued that the trial court erred by refusing to instruct the jury on the theories of perfect and imperfect self-defense and voluntary manslaughter, *inter alia.* *Id.* at 661, 459 S.E.2d at 778. In upholding the judgments of the trial court, our Supreme Court held

> that the evidence, taken in the light most favorable to the defendant, does not tend to show that the defendant had formed a reasonable belief that it was necessary to kill the person inside his doorway in order to save himself from death or great bodily harm; and therefore, he was not entitled to an instruction on self-defense. The defendant's evidence, considered in the light most favorable to him, tended to show that when he heard the blows on his door, he was scared and thought he was being robbed again. Defendant testified he only pulled the trigger of his .38-caliber revolver "to shoot a warning shot hoping these people would run." Defendant also testified that he "didn't intend to shoot anybody" and that his "intent was to shoot at the top of the door." Thus, from defendant's own testimony regarding his thinking at the critical time, it is clear he meant to scare or warn and did not intend to shoot anyone. There is absolutely no evidence in the record that defendant had formed a belief that it was necessary to kill in order to save himself from death or great bodily harm. *See State v. Reid*, 335 N.C. 647, 671, 440 S.E.2d 776, 789 (1994) (the first requirement of self-defense, that defendant believed it necessary to kill the deceased, is not present where defendant contended he never aimed a gun at anyone and shot only at the floor). Further, defendant's self-serving statement that he was "scared" is not evidence that defendant formed a belief that it was necessary to kill in order to save himself. *See Bush*, 307 N.C. at 159-60, 297 S.E.2d at 568 (defendant's testimony that he was "afraid" and "scared" only indicates a vague and unspecified fear or nervousness and is not evidence that defendant subjectively believed it was necessary to kill in order to protect himself from death or great bodily harm). Because no evi-

dence demonstrates or indicates defendant believed it necessary to kill to protect himself from death or great bodily harm, defendant was not entitled to an instruction on either perfect or imperfect self-defense. *State v. Norman*, 324 N.C. 253, 260, 378 S.E.2d 8, 12 (1989).

*Id.* at 662-63, 459 S.E.2d at 778-79.

In the present case and as in *Lyons*, there is no evidence that Defendant believed it necessary to kill Santiago in order to save himself from death or great bodily harm. By Defendant's own testimony, Defendant was not in fear for his life when he fired his gun. Defendant described the shooting as follows:

The guy ended up laying on the floor, and I was over him hitting him as he was swinging back, too. Somebody hit me in the back of the head with something. I still don't know where it—what it was to today, and I ended up that time putting my hand on a pistol I had in the back of my pocket. So, when I looked up there's a guy standing in front of me with a shotgun. So, I—the first thing I do I look at his hands to see what his hand's doing, I see his finger moving back so I closed my eyes thinking I was going to get shot. So, I heard a click where the back of the—where he pulled the trigger and the hammer hitting the back of the gun, but no bullet comes out. So, I pulls out my pistol and I fires and begins to run to get out the door, but as I take the step, the guy that I was on was holding onto me, and he was kicking up at me so I fired.

Defense counsel asked Defendant what he was trying to do when he fired his pistol, and Defendant responded, "Just get away and get them off of me." Defense counsel continued with direct examination and asked Defendant if he knew that he had hit anyone when he fired his pistol. Defendant replied, "No, sir. I didn't really try to see. I was just trying to turn and get away then. You know, I just fired a shot trying to hope they'd get off of me really with my eyes closed not even really looking at what I'm firing at."

On cross-examination by the State, Defendant described how the fight began and how it progressed leading up to the shooting. The following exchange took place:

[THE STATE]. All right. Before [one of the men] got to the doorway, you started this fight on the curb, you said?

[DEFENDANT]. Yes, sir.

[THE STATE]. You went through his yard?

[DEFENDANT]. Yeah, we were fighting through the yard.

[THE STATE]. That means you're going forward; he's going backwards?

[DEFENDANT]. No, we're both fighting. He hitting me and I'm hitting him. He might be trying to dodge a punch; I might be trying to dodge a punch. We're just going through a little fight all through the yard.

[THE STATE]. Well, he starts—

[DEFENDANT]. But he's at the time like—he done hit me, you know what I'm saying, and we're in a fight, and in my mind I'm like I'm gonna get him; I'm not going to let him get away. I don't know what's gonna go on.

[THE STATE]. You're not even going to let him get away if he gets back into his own house, right?

. . . .

[DEFENDANT]. Well, right then, no, I was just thinking about fighting.

[THE STATE]. You weren't going to let him get away, even into his own house, yes or no?

[DEFENDANT]. Well, at the time I was fighting. I wasn't thinking about him getting away.

[THE STATE]. Yes or no?

[DEFENDANT]. No.

[THE STATE]. Thank you.

THE COURT: Now you may explain your answer. Once you answer yes or no, you may give an explanation if there is one.

[DEFENDANT]: See, I was in the midst of fighting so I was trying to not let the man get away and go get nothing. I was commenced to beating his butt. He had done hit me, and we was in the commenced to fighting.

Defendant further testified on cross-examination that when he fired the gun, he was not aiming anywhere specific, but that he was simply

trying to get away. Defendant testified, "I didn't look down and point the gun. I just fired a shot with my head still up looking trying to get out the door. I didn't look at what I was shooting at."

There is no evidence that Defendant fired his gun because he feared for his life. Indeed, had he fired his gun because he believed it necessary to protect himself from death or great bodily harm, he would have taken aim at the source of such likely harm, rather than, as he testified, shooting blindly while trying to get out the door. The evidence clearly indicates that Defendant initiated a fight, that Defendant was determined to win that fight, and that Defendant fired his gun in order to get away. There is no evidence that Defendant believed he was in danger of death or great bodily harm if he was unable to get away from the fight. *See Revels*, —— N.C. App. at ——, 673 S.E.2d at 681. Further, it appears that the trial court did not think there was any evidence that Defendant believed he needed to fire his gun in order to save himself from death or great bodily harm. *See id.* On the contrary, the trial court explained that it was giving the self-defense charge "out of an abundance of caution" in an effort to avoid having to retry this matter.

The question of whether the trial court erred in instructing the jury on the law of self-defense as it related to the charges of first-degree and second-degree murder is not before us and, in any event, any such error would have been to Defendant's benefit. On the issue that is before us—whether the court erred in refusing to instruct the jury on voluntary manslaughter under a theory of imperfect self-defense—we find no error.

NO ERROR.

Judge BEASLEY concurs.

Judge HUNTER, JR. dissents in a separate opinion.

HUNTER, JR., Robert N., Judge, dissenting:

On 7 May 2005, defendant was involved in an altercation with six men, including Ignacio Tolentino ("Ignacio") and Santiago Aquino Rivera ("Santiago"). The altercation took place in part inside the home of Ignacio and Santiago. The following additional evidence, not all of which is included in the majority's opinion, describing this altercation informs my decision to dissent.

**STATE v. CRUZ**

[203 N.C. App. 230 (2010)]

The relevant State's evidence on the issue of self-defense is as follows: While defendant and Ignacio were fighting, Santiago walked down the hallway to the bedroom where Renaut and Julio were sleeping, whereupon he told Julio that defendant was hitting his brother. Julio called the police, locked the apartment door to prevent defendant from leaving, and beat defendant with the telephone while waiting for the police to arrive. Renaut retrieved a shotgun and pointed it at defendant. Defendant then let go of Ignacio. Renaut cocked the gun and defendant begged Renaut not to shoot him, stating, "Dear God, do not kill me." Julio unlocked the door and looked outside to see if anyone had come with defendant, at which point defendant attempted to run out of the apartment.

Defendant's evidence tended to show the following: On 7 May 2005, at approximately 7:00 a.m., defendant was walking on the street near Santiago and Ignacio's apartment building. As defendant neared the corner, Santiago and Ignacio began to point at him, and one of the men came out into the yard and began to argue with defendant. In order to defend himself, defendant swung and tried to hit the man that approached him. Defendant testified that he fought with the man in the yard, on the porch, and in the doorway of the apartment.

While the men were fighting, someone hit defendant with an unknown object in the back of the head. The blow to the head caused defendant to close his eyes and left him dizzy. After being hit in the head, defendant put his hand on his pistol but did not pull the gun out of his pocket. When defendant opened his eyes, he saw a man holding and pointing a shotgun at his head. At this point, defendant, thinking that he was going to be shot, closed his eyes and listened to the gun click as the man pulled the trigger. The gun did not fire. Defendant, in an attempt to get away from the men, pulled his pistol and fired a shot at the man holding the shotgun but was unsure whether he shot anyone. As defendant attempted to leave the apartment, someone held defendant and kicked him, whereupon defendant fired another shot at the ground. The second shot hit the man in his leg who was holding defendant.

After defendant shot both men, he ran from the apartment but was hit in the face with a two-by-four stick by one of the other men living at the apartment. Defendant hit this man with his pistol, breaking it into two pieces. The two men continued to hold and beat defendant until the police arrived. Defendant ran toward the police officer and complied with the officer's instructions to stop and sit

down. Defendant denies robbing or attempting to rob the men at the apartment.

Based upon this evidence and the evidence cited in the majority opinion the trial court decided to give the perfect self-defense instruction. This decision, although reluctantly made by the trial court, was unchallenged by the State at trial and was not appealed. I do not question the correctness of the trial court's decision to grant the self-defense instruction. However, I do question the trial court's subsequent decisions implementing the consequences of the decision to instruct on perfect self-defense, once that decision had been made. Once a trial court decides that there is sufficient evidence to give the perfect self-defense instruction, it seems to me that the imperfect self-defense instruction should also be given pursuant to a duty under law and as a logical consequence of this initial decision. This duty has been recognized in our state by the leading commentators and our courts. *See State v. Best,* 79 N.C. App. 734, 737, 340 S.E.2d 524, 527 (1986), *overruled on other grounds, State v. Maynor,* 331 N.C. 695, 417 S.E.2d 453 (1992); *State v. Rummage,* 280 N.C. 51, 58, 185 S.E.2d 221, 226 (1971); *see also* JOHN RUBIN, THE LAW OF SELF-DEFENSE IN NORTH CAROLINA 192 (Institute of Government, University of North Carolina at Chapel Hill 1996).

Whether evidence is sufficient to warrant an instruction on self-defense is a question of law; therefore, the applicable standard of review is *de novo. State v. Lyons,* 340 N.C. 646, 662-63, 459 S.E.2d 770, 778-79 (1995). The trial court must instruct the jury on self-defense "if there is *any evidence* in the record from which it can be determined that it was necessary or reasonably appeared to be necessary for [defendant] to kill his adversary in order to protect himself from death or great bodily harm." *State v. Bush,* 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982) (emphasis added) (citing *State v. Spaulding,* 298 N.C. 149, 156, 257 S.E.2d 391, 395 (1979)), *aff'd,* 826 F.2d 1059 (1987). Moreover, the trial court must provide a self-defense instruction if the above criteria is met "even though there is contradictory evidence by the State or discrepancies in the defendant's evidence." *State v. Revels,* —— N.C. App. ——, ——, 673 S.E.2d 677, 680 (citing *State v. Dooley,* 285 N.C. 158, 163, 203 S.E.2d 815, 819 (1974)), *disc. review denied,* 363 N.C. 379, 680 S.E.2d 204 (2009). With regard to whether defendant is entitled to a jury instruction on self-defense, the trial court must consider the admissible evidence in the light most favorable to the defendant. *State v. Hughes,* 82 N.C. App. 724, 727, 348 S.E.2d 147, 150 (1986).

In the case at bar, the trial court instructed the jury on perfect self-defense, but refused to provide an instruction on imperfect self-defense. A defendant acts in perfect self-defense when the following four elements are present at the time of the killing:

"(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm."

*Revels*, —— N.C. App. at ——, 673 S.E.2d at 681 (citation omitted). An instruction on imperfect self-defense should be given where a defendant "reasonably believes it necessary to kill the deceased to save himself from death or great bodily harm even if defendant (1) might have brought on the difficulty, provided he did so *without* murderous intent, and (2) might have used excessive force." *State v. Mize,* 316 N.C. 48, 52, 340 S.E.2d 439, 442-43 (1986). The doctrine of imperfect self-defense encompasses the first two elements of perfect self-defense; therefore, in a homicide case where there is sufficient evidence to warrant instructions on perfect self-defense, the trial court must also instruct on imperfect self-defense. *See Best,* 79 N.C. App. at 737, 340 S.E.2d at 527 (explaining "[i]t is difficult to imagine a homicide case in which the evidence supports an instruction on self defense but not an instruction on voluntary manslaughter based upon an excessive force theory"). In the present case, because the court instructed the jury on perfect self-defense, the evidence must have been sufficient to warrant an instruction on imperfect self-defense. *See id.*

Viewing the evidence on record pursuant to the *any evidence* standard articulated in *Bush,* I would hold that the trial court erred in failing to instruct the jury on imperfect self-defense. *See Bush,* 307 N.C. at 160, 297 S.E.2d at 569.

A killing based on imperfect self-defense "is both unlawful and intentional, [however] the circumstances themselves are said to displace malice and to reduce the offense from murder to manslaughter." *State v. Herndon*, 177 N.C. App. 353, 362, 629 S.E.2d 170, 176 (quoting *State v. Wilkerson*, 295 N.C. 559, 579, 247 S.E.2d 905, 916 (1978)), *disc. review denied, appeal dismissed*, 360 N.C. 539, 634 S.E.2d 542 (2006). " '[V]oluntary manslaughter is an intentional killing without premeditation, deliberation or malice but done in the heat of passion suddenly aroused by adequate provocation or in the exercise of imperfect self-defense where excessive force under the circumstances was used or where the defendant is the aggressor.' " *Lyons*, 340 N.C. at 663, 459 S.E.2d at 779 (quoting *State v. Wallace*, 309 N.C. 141, 149, 305 S.E.2d 548, 553 (1983)).

Where a lesser included offense is supported by the evidence, the trial court must instruct the jury on that offense. " '[T]he failure to so instruct constitutes reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense.' " *State v. Bumgarner*, 147 N.C. App. 409, 417, 556 S.E.2d 324, 330 (2001) (citation omitted). In *State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981), our Supreme Court noted that "[t]he sole factor determining the judge's obligation to give such [a lesser included] instruction is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense." This Court considers the admissible facts in the light most favorable to the defendant when determining whether defendant is entitled to a jury instruction on voluntary manslaughter based on imperfect self-defense. *State v. Coley*, 193 N.C. App. 458, 467, 668 S.E.2d 46, 53 (2008), *aff'd*, 363 N.C. 622, 683 S.E.2d 208 (2009).

Weighing the totality of all the evidence as required by our case law and for the reasons stated above, I would find the trial court's failure to give the imperfect self-defense jury instruction requested by the defendant to be a prejudicial error and therefore dissent from the majority opinion.