STATE OF NORTH CAROLINA
v.
MARTY TARRELL GASTON

No. COA13-1

Filed 3 September 2013

**Homicide—self-defense—manslaughter—jury    instructions—insufficient evidence**

The trial court did not err in a homicide case by denying defendant's request for jury instructions on self-defense and voluntary manslaughter. There was insufficient evidence presented at trial to support a conviction of voluntary manslaughter based on a theory of imperfect self-defense.

Appeal by Defendant from judgment entered 20 July 2012 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 August 2013.

> Attorney General Roy Cooper, by Assistant Attorney General Richard J. Votta, for the State.

> Tin Fulton Walker & Owen, PLLC, by Matthew G. Pruden and Noell P. Tin, for Defendant.

STEPHENS, Judge.

### Procedural History and Evidence at Trial

This case arises from the shooting death of Larry Gaither ("the decedent"), which occurred at the home of the decedent's cousin, Sheree Thomas ("Thomas"), in the early morning hours of 11 October 2008. On the night of 10 October 2008, the decedent gathered with a number of other individuals at Thomas's home to celebrate Thomas's album release. It is undisputed that, in the early morning hours of 11 October 2008, Marty Tarrell Gaston ("Defendant"), Thomas's then-boyfriend, arrived at Thomas's home for the first time. Defendant and the decedent became involved in an argument. During the argument, Defendant shot and killed the decedent. Testimony regarding the events leading up to and encompassing the killing was offered at trial by a number of individuals who attended the party. From varying perspectives, those individuals testified in pertinent part to the following:[1]

Between 2:30 and 3:00 a.m. on October 11, a Cadillac car arrived at Thomas's house. There were two people in the car. One person, later identified as Defendant, got out and went inside. When Defendant entered the house, he grabbed Thomas by the hair and pulled her up the stairs while she struggled. The decedent became upset and confronted Defendant; they exchanged words. Defendant continued pulling Thomas up the stairs, and the two eventually entered a bedroom and closed the door. After hearing a scream, the decedent entered the bedroom with his cousin and others. Defendant was holding Thomas's gun. There was a gunshot and the decedent fell to the floor. Defendant went down the stairs, out the door, and left Thomas's home.

---

1. Extensive testimony was offered regarding the details of the evening's events. To the extent those details are irrelevant to the issue raised on appeal, they are not repeated here.

Defendant's testimony largely corroborates the events described in the preceding paragraph. Defendant admitted to grabbing Thomas's hair, but denied pulling her up the stairs. Defendant testified that, after entering the bedroom with Thomas, he heard the decedent say he was going to kill Defendant and "go to his trunk and get a gun . . . that shoot like a missile." Defendant testified that he "got a little scared," picked up Thomas's gun, and opened the door, intending to leave. When Defendant opened the door, the decedent's cousin entered the room and grabbed him around the waist; they began struggling. During the struggle, Defendant heard footsteps and recognized the decedent. He testified that "[t]he gun went off [at that moment]. One time. I didn't aim the gun." He also testified that he did not know anyone had been shot and did not intend to kill the decedent. He stated that he did not pull the trigger on purpose, and that the gun went off accidentally.

Defendant also offered the testimony of his friend, Reginal Lindsey ("Lindsey"), who drove Defendant to Thomas's home on October 11. Lindsey testified that he entered the house and saw the decedent screaming and saying "[a]in't nobody going to do nothing to my cousin." He heard the decedent say "I got some shit out there in the trunk that shoot like a missile" and watched him go outside. The decedent came back in after about thirty seconds and went up the stairs. There was a gunshot, and Defendant came out of the house and left with Lindsey. As they were driving, Defendant disposed of the gun along the road.[2]

During the charge conference, the following exchange occurred between defense counsel and the trial court:

> [DEFENSE COUNSEL]: Well, Your Honor, I would ask for voluntary manslaughter.
>
> THE COURT: Voluntary only comes into play when you have self-defense,[3] which you don't have.
>
> [DEFENSE COUNSEL]: The [c]ourt indicated yesterday [that it] was going to instruct on self-defense.

---

2. Defendant, who had been convicted of a felony before the killing in this case, testified that he disposed of the gun because he knew he "wasn't supposed to have a gun . . . ."

3. We note that voluntary manslaughter occurs either (1) "when one kills intentionally but does so in the heat of passion suddenly aroused by adequate provocation *or* [(2)] in the exercise of [imperfect] self-defense where excessive force is utilized or the defendant is the aggressor." *State v. Barts*, 316 N.C. 666, 692, 343 S.E.2d 828, 845 (1986) (emphasis added).

THE COURT:   No. You can't have an accident and self-defense in the same case.

. . .

[DEFENSE COUNSEL]:  I believe the [c]ourt should give self-defense.

THE COURT: Well, you can't — self-defense involves an intentional act —

. . .

THE COURT:   — by the defendant.

. . .

THE COURT: . . . If it requires an intentional act, it requires proof or evidence that the defendant believed [it] necessary to do what he did to prevent death or grave bodily harm, and there's no evidence of that.

[D]efendant testified that the gun went off. That he didn't intentionally fire it. You can't have self-defense if it's not an intentional act. . . .

[DEFENSE COUNSEL]:  Well, the interesting thing there is we're giving a charge of first-degree murder and second-degree murder and that is suggesting there was an intentional act. So there would have to be some evidence of that from somewhere.

THE COURT:  Well, I'm not going to give self-defense. You pack this thing up and take it down to Raleigh.

At the conclusion of the trial, the court instructed on first-degree murder, second-degree murder, and accident. Defendant was found guilty of second-degree murder and sentenced to 240 to 297 months in prison.

### Discussion

Defendant's sole argument on appeal is that the trial court erred in denying his request for jury instructions on self-defense and voluntary manslaughter because there was evidence presented at trial to support a conviction of voluntary manslaughter based on a theory of self-defense. We find no error.

"It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence." *State v. Shaw*, 322 N.C. 797,

803, 370 S.E.2d 546, 549 (1988). "Failure to instruct upon all substantive or material features of the crime charged is error." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). "An instruction about a material matter must be based on sufficient evidence." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citations omitted). "Where jury instructions are given without supporting evidence, a new trial is required." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995). Accordingly, "[t]his Court reviews a defendant's challenge to a trial court's decision to instruct the jury on the issue of the defendant's guilt of a lesser[ ]included offense . . . on a *de novo* basis." *State v. Debiase*, 211 N.C. App. 497, 503–04, 711 S.E.2d 436, 441, *disc. review denied*, 365 N.C. 335, 717 S.E.2d 392 (2011) (citations omitted).

As a rule,

> [a] judge presiding over a jury trial must instruct the jury as to a lesser[-]included offense of the crime charged where there is evidence from which the jury could reasonably conclude that the defendant committed the lesser[ ] included offense. In determining whether the evidence is sufficient to support the submission of the issue of a defendant's guilt of a lesser[ ]included offense to the jury, courts must consider the evidence in the light most favorable to the defendant. However, if the State's evidence is sufficient to fully satisfy its burden of proving each element of the greater offense and there is no evidence to negate those elements other than [the] defendant's denial that he committed the offense, [the] defendant is not entitled to an instruction on the lesser offense.

*Id.* (citations, quotation marks, and certain brackets omitted).

"Voluntary manslaughter is an intentional killing without malice committed either in the heat of passion or through imperfect self-defense resulting in [sic] excessive force." *State v. West*, 180 N.C. App. 664, 668, 638 S.E.2d 508, 511 (2006) (citation omitted). Defendant does not contend that his killing of the decedent was committed in the heat of passion. Accordingly, our review is limited to whether there is substantial evidence of imperfect self-defense sufficient to require an instruction on voluntary manslaughter.

An instruction on imperfect self-defense and, thus, voluntary manslaughter is necessary when two questions are answered in the affirmative:

> (1) Is there evidence that the defendant in fact *formed a belief* that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable? If both queries are answered in the affirmative, then an instruction on self-defense must be given. If, however, the evidence requires a negative response to either question, a self-defense instruction should not be given.

*State v. Wallace*, 309 N.C. 141, 148, 305 S.E.2d 548, 553 (1983) (emphasis added). When determining whether there is sufficient evidence to show that the defendant formed such a belief, the facts must be interpreted in the light most favorable to the defendant. *State v. Hughes*, 82 N.C. App. 724, 727, 348 S.E.2d 147, 150 (1986). If the court finds that the evidence is sufficient to submit the issue to the jury, then it is for the jury to determine the reasonableness of the defendant's belief that self-defense was warranted under the circumstances as they appeared to him. *Id.* at 728, 348 S.E.2d at 150.

The State argues that the evidence here cannot support a self-defense instruction and, thereby, an instruction on voluntary manslaughter because Defendant testified that the gun simply "went off," he "didn't aim the gun," he did not know anyone had been shot, he did not pull the trigger on purpose, and he did not intend to kill the decedent. Accordingly, the State contends, the trial court did not err in failing to submit either instruction to the jury. We agree.

In *State v. Williams*, our Supreme Court held that

> [the] defendant [was] not entitled to an instruction on self-defense while still insisting that he did not fire the pistol at anyone, that he did not intend to shoot anyone[,] and that he did not know anyone had been shot. Clearly, a reasonable person believing that the use of deadly force was necessary to save his or her life would have pointed the pistol at the perceived threat and fired at the perceived threat. The defendant's own testimony, therefore, disproves the first element of self-defense.

342 N.C. 869, 873, 467 S.E.2d 392, 394 (1996). The Court affirmed that conclusion six years later in *State v. Nicholson*, 355 N.C. 1, 558 S.E.2d 109 (2002). There the defendant testified that he "felt afraid[,] fired two shots into the floor of [his] trailer as he ran outside. . . . [,] did not intend to hit anyone[,] and denied shooting either his wife or [the police chief]." *Id.* at 30, 558 S.E.2d at 130. Given that testimony, the Court determined

that "there was no evidence to support a finding that [the] defendant in fact formed a belief that it was necessary to kill either his wife or [the police chief] to protect himself from death or serious injury." *Id.* Accordingly, the Court concluded that it was error for the trial court to instruct on self-defense, pointing out that "the gratuitous instructions on self-defense [were] error favorable to [the] defendant," which constituted "a benefit to which he was not entitled." *Id.* at 31, 558 S.E.2d at 131.

Defendant attempts to rebut the State's argument by citing to a line of cases from this Court which, he contends, appear to directly conflict with *Williams* and *Nicholson*. Defendant argues that the question of "whether he was guilty of voluntary manslaughter on a theory of self-defense" should have been submitted to the jury under *those cases* because there was evidence presented at trial to support such a conviction. We disagree.

In *State v. Adams*, 2 N.C. App. 282, 163 S.E.2d 1 (1968), we determined that the trial judge erred by failing to instruct the jury on self-defense when the defendant shot and killed the decedent, even though

> the defendant contended that the actual discharge of the gun was not intended [and] also contended that he hid the loaded gun in the garage and later took it in his hands for the purpose of protecting his mother from serious harm or death at the hands of his father.

*Id.* at 288, 163 S.E.2d at 5. Pointing out that "[t]he defendant may rely on more than one defense" at trial, we allowed an instruction on self-defense, despite the defendant's contrary testimony, because "[p]roper instructions on self-defense and defense of another would have enabled the jury to determine whether the defendant was justified in having the loaded gun in his possession at the time of the fatality." *Id.* (citation omitted) (commenting that "[t]he tender age of the defendant[4] presented a more compelling reason why the jury should have been charged on the principles of self-defense and defense of another in addition to the defense of accident"); *see also State v. Owens*, 60 N.C. App. 434, 436, 299 S.E.2d 258, 259 (1983) (requiring the submission of voluntary manslaughter to the jury despite the defendant's testimony that he pulled his pistol out of fear of the victim and did not intend to shoot the victim, because "the jury could have concluded that [the] defendant intentionally fired the gun in self-defense but used excessive force").

---

4. The defendant in *Adams* was a 14-year-old boy. *Adams*, 2 N.C. App. at 284, 163 S.E.2d at 2. Defendant Gaston was 37 years old at the time of the shooting in this case.

In *State v. Hayes*, 88 N.C. App. 749, 364 S.E.2d 712 (1988), the defendant was indicted for first-degree murder. *Id.* at 750, 364 S.E.2d at 712. At trial, she testified that she pulled out a knife to protect herself from the victim, who she believed was "trying to seriously injure her." *Id.* "[The victim] then 'charged' [the] defendant and impaled himself on the knife. [The d]efendant testified that she did not intend to stab [the victim]." *Id.* We held in *Hayes* that the trial court erred by failing to instruct on self-defense when the State's evidence tended to show that the killing was intentional and the defendant's evidence tended to show that the killing was unintentional because "the jury is free to believe all, some[,] or none of a particular witness's testimony." *Id.* at 751, 364 S.E.2d at 713. In so holding, we reasoned that:

> [T]he jury could have believed that portion of the State's evidence tending to show an intentional stabbing while also believing that part of [the] defendant's evidence tending to show [that the] defendant pulled the knife to protect herself from serious injury at the hands of [the victim]. *The contradictory statements made at trial do not cancel out the testimony given. Evidence of contradictory statements bear[s] on the weight to be given the testimony — a question for the jury.*

*Id.* at 752, 364 S.E.2d at 713 (citation, quotation marks, brackets, and ellipsis omitted).

To the extent that these cases conflict with the Supreme Court opinions cited by the State,[5] we find that *Adams, Hayes,* and their progeny have been implicitly overruled by *Williams* and *Nicholson* on the issue of whether an instruction on self-defense is proper when the defendant offers no evidence that he intended to kill the decedent upon reasonably believing that he must do so to save himself. *See Williams,* 342 N.C. at 873, 467 S.E.2d at 394; *Nicholson,* 355 N.C. 1, 558 S.E.2d 109; accord *State v. Lyons,* 340 N.C. 646, 662, 459 S.E.2d 770, 779 (1995) (finding no error when the trial court failed to instruct on self-defense and "[the] defendant's own testimony regarding his thinking at the critical time [made clear that he intended] to scare or warn and did not intend to shoot anyone"); *State v. Reid,* 335 N.C. 647, 671, 440 S.E.2d 776, 789–90 (1994) (holding that the defendant could not claim self-defense when he asserted that he did not aim his gun at the victim and did not hold the

---

5. We emphasize that we do not conclude that there is a conflict between the two lines of cases. The earlier opinions of the Court of Appeals obviously involve multiple distinguishing features, none of which is present here.

weapon that killed the victim); *State v. Blankenship*, 320 N.C. 152, 155, 357 S.E.2d 357, 359 (1987) ("[The d]efendant's evidence tended to show that the shooting was an accident. The trial court gave proper instructions to the jury concerning the defense of accident. The evidence did not warrant more."); *Wallace*, 309 N.C. at 148–49, 305 S.E.2d at 553 (holding that the evidence presented at trial would not support a finding of not guilty by reason of self-defense or a verdict of guilty of voluntary manslaughter where defendant's evidence indicated that he did not shoot the deceased intentionally); *State v. Mize*, 316 N.C. 48, 54, 340 S.E.2d 439, 443 (1986) ("[The defendant's] testimony that he did not aim the shotgun to kill [the victim] avails him to nothing. If this were true, the first requirement of self-defense, that [the] defendant believed it necessary to kill the victim, would not be met."); *State v. Bush*, 307 N.C. 152, 159–60, 297 S.E.2d 563, 568 (1982) ("[The] defendant's self-serving statements that he was 'nervous' and 'afraid' and that he thought he was 'protecting himself' [do not] amount to evidence that the defendant had formed any subjective belief that it was necessary to kill the deceased in order to save himself from *death* or *great bodily harm*.") (emphasis in original).

In this case, Defendant offered no evidence that he formed any belief, reasonable or not, that it was necessary to kill the decedent in order to protect himself from death or great bodily harm. Instead, Defendant repeatedly testified that he did not intend to kill the decedent, stating that he did not aim the gun, the gun went off accidentally, and he did not intentionally pull the trigger. The fact that Defendant testified he was "a little scared" is inapposite. *See Nicholson*, 355 N.C. at 30, 558 S.E.2d at 130. Therefore, as our Supreme Court noted in *Williams*, Defendant's own testimony disproves the first element of self-defense. 342 N.C. at 873, 467 S.E.2d at 394. Accordingly, we hold that the trial court committed no error in instructing the jury on accident and failing to instruct the jury on self-defense and voluntary manslaughter.

NO ERROR.

Judges BRYANT and DILLON concur.